ORSAMUS NUTE vs. BOSTON CO-OPERATIVE BUILDING
COMPANY.

Suffolk.   March 25, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, & HOLMES, JJ.

*Private Way — Sidewalk.*

The St. of 1849, c. 133, providing that, upon the opening of a street in Boston by
private landowners for the use of the public, the owners of lots abutting thereon
must, before its legal acceptance and laying out, construct convenient sidewalks
on each side of such street at their own expense, "in such manner as the safety
and convenience of the public shall, in the opinion of the mayor and aldermen
of said city, require," was *held*, in the absence of such a requirement, not to
impose upon an abutter on a private way so opened in that city any duty to
build and maintain a sidewalk in the way in front of his premises, nor even
to authorize him to do so.

An abutter upon such a way was *held*, independently of that statute, to have no
right so to construct such a sidewalk as sensibly to interfere with the use and
enjoyment of the passageway by another abutter upon the opposite side of
the way.

BILL IN EQUITY, filed June 15, 1888, for the removal of a side-
walk in Andrew Place in Boston.   Hearing before *Devens*, J.,
who reported the case for the consideration of the full court,
in substance as follows.

On July 24, 1868, the city of Boston was the owner of a tract
of land between Canton Street, now called East Canton Street,
and Dedham Street, now called East Dedham Street, and on
that day the committee on public lands of the city council,
whose powers and duties were derived from a city ordinance
relating to the public lands dated May 3, 1864,* voted "that

---

* This ordinance, so far as material, was as follows :

"Section 1.   In the month of January of each year, there shall be ap-
pointed a joint committee of the city council, to be called the committee on
public lands, consisting of such numbers from each board as the city coun-
cil may from time to time order.

"Section 2.   The committee shall have the care and management of the
public lands belonging to the city, so far as relates to the improvement, sale,
and disposal of the same, subject to the approval of the mayor, and subject
also to the limitations mentioned in this and other ordinances of the city,

a passageway sixteen feet in width be laid out between Canton and Dedham Streets, so as to make the lots ninety-two feet in depth." This action of the committee was approved by the mayor, but there was no evidence that it was ever approved by the board of aldermen. This passageway was afterwards laid out of the requisite width, and was called Andrew Place, and the city posted and maintained at each end of it the following notice: " This is a private way. Dangerous passing."

The plaintiff was the owner of land fronting on East Dedham Street and the defendant of land on East Canton Street, both deriving title from the city of Boston by deeds describing the premises granted to each as bounded in the rear " by a passageway sixteen feet wide," which was Andrew Place. The plaintiff, who was a teamster and owned various carts and wagons, including caravans so called, bought his land in 1874, and built on it a stable with entrances from East Dedham Street and Andrew Place. The defendant had erected on its land blocks of tenement houses which contained thirty-four houses, seven of which fronted on Andrew Place and had no other entrance, and all of which communicated with it, either directly or through back yards.

The defendant had built and continued to maintain a brick sidewalk four feet wide along its whole line on Andrew Place, except at a cross street, and had erected posts in the sidewalk at intervals, and located eight inches or more from its outer edge. It was admitted that, if the defendant had a right to maintain any sidewalk in Andrew Place, the existing structure was a reasonable one. Andrew Place is a thoroughfare considerably used by various teams and vehicles, both calling at the defendant's houses and passing through, including ice, milk, and city carts, grocer wagons, and lumber teams, none of which have been obstructed by the defendant's sidewalk.

The plaintiff introduced evidence tending to show that he was

---

and to such rules, orders, and regulations as the city council may from time to time adopt.

" Section 3. The said committee are authorized to lay out and make such streets, passageways, and squares on the public lands, to lay such sewers therein, and to make such alterations in the lots, as they may deem expedient, subject to the approval of the board of aldermen."

unable to drive his wagons, including water carts and caravans, out of the door of his stable on Andrew Place, and turn them so as to go out over it, without unhitching the horses and lifting the pole over a post in the sidewalk opposite his stable door, and swinging it around and then attaching the horses again; and that sometimes he had to do this a second time in order to get by another post about ten feet farther along; and that before the building of the sidewalk he had no difficulty in getting out. The plaintiff testified that he and others had used the passageway since 1867 without objection, although he owned no land abutting on Andrew Place before 1874; that a space of sixteen feet was necessary to turn round a corner with a water cart, and that he could not turn to any advantage in a passageway less than sixteen feet wide; that his water carts were about ten feet long, and his caravans twenty feet or more, all exclusive of the poles, which were nine feet long. There was also evidence tending to show loss of time and pecuniary damage by reason of such delay.

The defendant offered in evidence the St. of 1849, c. 133, and contended that under that statute it was its duty to maintain a sidewalk in Andrew Place; and also that, independently of the statute, the building and maintaining of its sidewalk was a reasonable and proper use of the way which it had a right to make.

If the defendant was entitled to maintain the sidewalk, the bill was to be dismissed, with costs; otherwise, a decree was to be entered for its removal, the damages of the plaintiff, if he was entitled to recover any, to be assessed by a master.

*S. W. Harmon,* for the plaintiff.

*R. Gray,* (*H. W. Swift* with him,) for the defendant.

DEVENS, J.  The plaintiff owns the land on one side, and the defendant on the other side, of a passageway in the city of Boston, commonly known as Andrew Place. Both parties derive their title from the city, and have a title in fee to the centre of the passageway, and a right of way through its whole length. *Tobey* v. *Taunton,* 119 Mass. 404. *Gould* v. *Eastern Railroad,* 142 Mass. 85. The city was formerly the owner of a large tract of land which included these parcels, and on July 24, 1868, before the parties acquired their titles, the committee on public lands of

the city council voted " that a passageway sixteen feet in width be laid out between Canton and Dedham Streets, so as to make the lots ninety-two feet in depth," which action was afterwards approved by the mayor. While this committee was "authorized to lay out and make such streets, passageways, and squares on the public lands, to lay sewers therein, . . . subject to the approval of the board of aldermen," this action of the committee was not shown to have been approved by the board of aldermen. The city has posted, and keeps, at each entrance of Andrew Place a notice: " This is a private way. Dangerous passing." The defendant has built and maintains a brick side-walk four feet wide along the line of its premises on Andrew Place, erecting posts near the outer edge thereof. The plaintiff is a teamster, and the sidewalk interferes with his use of the way, with his horses, carts, and caravans. If the defendant is entitled thus to interfere with the plaintiff's use of the way by diminishing its width, and appropriating a part of the passage-way to the use of foot-passengers, the sidewalk as constructed is found to be a reasonable one.

The defendant cited the St. of 1849, c. 133, and contended that under that statute it was its duty to maintain a sidewalk in Andrew Place, and also contended, independently of the statute, that the construction and maintenance of the sidewalk was a reasonable and proper use of the passageway, which it had a right to make. By this statute it is enacted as follows: " When any street or way which now is or hereafter shall be opened in the city of Boston, over any private land, by the owners thereof, and dedicated to or permitted to be used by the public before such street shall have been accepted and laid out according to law, it shall be the duty of the owners of lots abutting thereon to construct convenient sidewalks on each side of such street or way, at their own expense, in such manner as the safety and convenience of the public shall, in the opinion of the mayor and aldermen of said city, require." Provision is then made, that on neglect or refusal the mayor and aldermen may construct the sidewalk, and assess the expenditure on the abutters, which assessment shall be a lien on their estates; that the act shall not affect any agreement heretofore made respecting such street or way between the owners and the

city; and that the construction of the sidewalk by the city shall not be construed as an acceptance of such way. We assume, without so deciding, that this act of 1849 is still in force, and was not repealed by the St. of 1872, c. 303 (Pub. Sts. c. 50, § 22). *Attorney General* v. *Boston,* 142 Mass. 200.

It is urged by the defendant, that, to be within the statute of 1849, a way must be opened in the city of Boston over private land by the owners; that this passageway is such a way, as it was opened by the city, through the committee on public lands, for the purpose of selling its land; that it was not laid out nor accepted according to law; and that it was dedicated to, or permitted to be used by, the public; and thus that, as all these conditions existed so far as Andrew Place was concerned, it was its statutory duty to build the sidewalk. But even if, upon an unaccepted street of this character, the mayor and aldermen may compel an abutter, or all the abutters, to build sidewalks, if the safety or convenience of the public, in their opinion, so requires, in such manner as they see fit, such authority on the part of the city does not impose upon the abutter upon a passageway of this description any duty to build a sidewalk for his own convenience or otherwise, or invest him with the right thus to narrow the carriageway. If the defendant had invoked the action of the mayor and aldermen, and they had directed the construction of this sidewalk, quite a different case would be presented. They are not required to order sidewalks to be built where the way is not to be laid out and accepted, and where no reasons of public safety or convenience demand it. Nor are we of opinion that this way can properly be said to be one " dedicated to or permitted to be used by the public." While the defendant does not urge that the evidence shows a dedication, it contends that the evidence does bring the passageway under the alternative clause of a way " permitted to be used by the public." In the connection in which it is used, this phrase means a permission of such a character as would have established, or afforded evidence sufficient to establish, a dedication before the St. of 1846, c. 203 (Pub. Sts. c. 49, § 94). While the way is found to be " a thoroughfare considerably used by various teams and vehicles, both calling at the defendant's houses and passing through, including ice, milk, and city carts, grocer

wagons, and lumber teams," its principal use is evidently for the purpose of bringing supplies to the defendant's houses thereon, although incidentally some vehicles pass through. No abutter has a right to close the passageway, and prevent this use, as he would thus interfere with the rights of others, and this enjoyment of the way is by those who are notified distinctly that it is a private way which they are using, and that the passing thereon is dangerous. This notice does not, indeed, in terms forbid the public to enter upon it, but informs them that they cannot use it as of right.

The defendant further contends, that, independently of the statute, it is fully authorized to build and maintain the sidewalk. A sidewalk necessarily implies a change in the grade of that part of the street where it is laid, as the very object is to elevate that portion of the street above the rest. Where it is guarded by an abrupt curb, as was the sidewalk of the defendant, it would necessarily prevent the use of that part of the way by teams, and, in addition, there was also a row of posts near the edge. Such a sidewalk might be entirely reasonable in itself, and yet sensibly interfere with the use of the way by teams. It is found that it prevents the plaintiff from turning his vehicles so as to drive from the door of his stable in one direction along the passageway without unhitching his horses, lifting the pole of the wagon over one of the posts, and again attaching them; and that sometimes this has to be done a second time. The plaintiff testifies that sixteen feet is necessary to turn his water carts into or from the stable, while it also appears that he uses wagons longer than this. Even if he has another entrance and exit for his teams on Dedham Street, upon which his stable fronts, so that his use of the passageway in question is not one of absolute necessity, he ought not to be deprived of this passageway, or have his rights therein materially diminished. In *Richardson* v. *Pond*, 15 Gray, 387, the plaintiff prescribed for a way through a gate defined by fixed limits. It was held, that if the erection of an iron post fixed in the ground, in place of a short bar of iron fastened to the building, " caused the way to be narrowed, so that the new gate erected by the defendant furnished a passage less convenient and useful to any appreciable extent for practicable purposes than the old gateway," it

would constitute an obstruction of the right of way. In *Killion* v. *Kelley*, 120 Mass. 47, it is held to be well settled that, " where there are several owners in common of a private way, each owner may make reasonable repairs which do not injuriously affect his co-owners, but he cannot make any alteration of the course of the way, or any change in its grade or surface, which makes the way less convenient and useful to any appreciable extent to any one who has an equal right in the way."

The plaintiff is therefore entitled to a decree ordering a removal of the sidewalk, and for such damages for its maintenance as may be assessed by a master. *Decree accordingly.*