ELEANOR VINTON & others *vs.* REUBEN GREENE & others.

Suffolk.    January 26, 1893. — March 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Passageway — Abandonment — Change of Grade — Description in Deed.*

A parcel of land was conveyed to the plaintiff by a deed describing the southeasterly boundary as " a line running longitudinally through the centre of the brick wall between the premises hereby conveyed and the adjoining estate," and in the same deed was granted "the right of use in common with the abutters thereon of a passageway on the southeast boundary as now laid out, about five feet wide, for any and all lawful purposes." At that time there was a continuous brick wall on the southeast boundary of the plaintiffs' land, and the only access to the passageway was by a gate through the wall. The owner of the adjoining estate subsequently lowered the grade of the passageway, and the plaintiffs then closed their gate by building a solid wall, and opened a coal-hole through the wall on the passageway on a level with the new grade. *Held,* on a bill in equity to restrain the defendants from changing the grade of the passageway, that even if the

opening of the coal-hole was unauthorized, and the use of it on the land covered by the party wall was a trespass, the use of the way by the plaintiffs was rightful ever since the closing of the gate, and that the closing of the gate did not constitute an abandonment. *Held, also,* that if the use of the coal-hole was not only unlawful in itself, but made the use of the passageway in connection with it unlawful, nevertheless such a continuous use of the passage with the knowledge and against the will of the owner of the fee was notice to him, and all concerned, that the plaintiffs' claim on the way was not abandoned. *Held, also,* that if the plaintiffs were bound to take any notice of the acts of strangers to the servient tenement, whose land abuts on one end of the passageway, and who have built on a plan which requires the lowering of the way, such notice was manifested by the maintenance of the coal-hole, and the plaintiffs were entitled to a decree restraining them from so changing the grade.

BILL IN EQUITY, filed on November 9, 1891, praying that the defendants be restrained from changing the grade of a passageway leading into Temple Place, in the city of Boston. Hearing before *Allen,* J., who directed a decree for the plaintiffs, from which the defendants appealed; and the case was reported upon the pleadings, an agreed statement of facts, and the evidence, for the determination of the full court upon the appeal. The bill alleged the following facts.

The plaintiffs are the owners of a parcel of land in the city of Boston, bounded southwesterly by Temple Place, so called, northwesterly by land of Thomas H. Perkins, northeasterly by land of the Proprietors of St. Paul's Church, and southeasterly by land of Reuben Greene. There is appurtenant to their estate a right to use, in common with the other abutters thereon, a passageway about five feet wide over the land of Greene, on the southeasterly boundary of the plaintiffs' land, which right was granted by deed dated April 12, 1833, from Thomas H. Perkins to John S. Stone, through whom by mesne conveyances the plaintiffs claim title. The defendants Shepard, Norwell, Ferguson, and Cole had leased a portion of the premises belonging to the Proprietors of St. Paul's Church, and were erecting thereon a structure which abuts on the plaintiffs' land and upon the northeasterly end of the passageway; and they were about to remove a portion of the soil, and to lower the grade at the easterly end of the passageway.

The defendants filed separate answers. Shepard, Norwell, and Company admitted that they had leased the land of the Proprietors of St. Paul's Church, and had erected a building thereon, but denied any intention of removing the soil, or of

lowering the grade of the passageway; but by a supplementary answer they alleged that since their former answer they had acquired a leasehold interest in the estate next adjoining that of the plaintiffs, including the passageway, and that Greene had granted to the proprietors of the church permission to depress the steps at the end of the passageway for a term of years, and this permission had accrued to their benefit as lessees. The answers of Greene and of the Proprietors of St. Paul's Church denied that there was appurtenant to the plaintiffs' estate a right to use the passageway, and that, if any such ever existed, it had been abandoned. The Wardens and Vestry of St. Paul's Church, as owners of the land at the northerly end of the passageway, were admitted as parties defendant, and adopted the answer of the Proprietors of St. Paul's Church.

The following is a plan of the premises.

The agreed facts stated in substance that the premises were substantially as shown on the foregoing plan; that the passageway in question ran from Temple Place to land of the Wardens and Vestry of St. Paul's Church at the point marked A; that the plaintiffs owned and occupied the premises marked "Vinton," and held title by mesne conveyances under a deed given on April 12, 1833, to John S. Stone, rector of St. Paul's Church, by Thomas H. Perkins, who owned the passageway and the land on each side of it; that the deed described the southeasterly boundary of the granted premises as "a line running longitudinally through the centre of the brick wall between the premises hereby conveyed and the adjoining estate, about seventy feet," and conveyed to the grantee, his heirs and assigns, a right of way in the passageway upon the premises now owned by the defendant Greene as follows: "the right of use in common with the abutters thereon of a passageway on the southeast boundary as now laid out, about five feet wide, for any and all lawful purposes, with the express understanding that said passageway shall be maintained and supported at the common expense of all the abutters thereon"; that the defendant Greene acquired the premises marked "Greene," including the passageway, in 1866, and held title by mesne conveyances under a deed dated June 1, 1832, given by John Amory to John A. Lowell, in which it was stipulated that the grantee, his heirs and assigns, should leave the passageway "free for the passage of the Proprietors of St. Paul's Church, and their assigns, to and from the land appurtenant to said church"; and that the Wardens and Vestry of St. Paul's Church owned the premises at the northerly end of the passageway, and the Proprietors of St. Paul's Church the premises next adjoining on the west, and that for more than twenty years they had constantly used the passageway for access to their premises, and had maintained at the northerly end thereof, at the point marked A, a door or gate which was locked from time to time.

It further appeared that from Temple Place to the point marked G the passageway was arched and covered by the building of Greene, but that from point G to A it was open, and at the point A there were five stone steps leading up from the passageway to the land of the Wardens and Vestry of St. Paul's Church.

On May 20, 1891, the Proprietors of St. Paul's Church leased to the defendants, Shepard, Norwell, and Company, a right of way over and through the passageway in question, and on the same day the Wardens and Vestry leased their premises to Shepard, Norwell, and Company for ten years, the lease stipulating that the lessees should erect a building covering the entire premises.

The land was to be excavated for a basement, the southerly end of which, marked E, was to be arched over for a corridor, and Shepard, Norwell, and Company having also leased the premises of Greene, it was further proposed to excavate the northerly end of the passageway from the point G to the level of the floor of the arched corridor, and at the point G to put in stone steps leading from the old passageway into the excavation, and thence by an incline sufficient to carry off surface water, into the arched corridor. Upon the lessees proceeding to excavate the passageway, this bill was brought, and an interlocutory decree was issued, restraining the defendants from altering the grade of the passageway.

The first question at issue is whether the plaintiffs had lost the right of way through the passageway by abandonment, it not being disputed that, unless so lost by abandonment, they had such a right of way as successors in title from John S. Stone; and the second question is whether, if such rights had not been so lost, the proposed alterations were such as would interfere with the rights of the plaintiffs.

There was evidence accompanying the agreed statement of facts, tending to show that in 1866 there was a dwelling-house on the front of the plaintiffs' premises, with a yard in the rear, and a continuous brick wall on the southeast boundary with a gate through it by which access was obtained to the passageway ; and that in the same year the defendant Greene purchased the adjoining premises, and lowered the passageway about forty inches. Thereupon the plaintiffs, in the fall of the same year, changed the dwelling-house on their land into a store. At the same time they built an " L," covering the yard in the rear of the main building, and, tearing down the old twelve-inch wall on the passageway, replaced it with an eight-inch solid wall six inches of which projected on the land of the defendant Greene,

and closed the gate. Subsequently the plaintiffs opened a coal-hole, ten inches by twelve, through the wall of their main building on the passageway. The plaintiffs' premises have been leased continuously since 1866, and the passageway has been constantly used by the tenants for the purpose of carrying coal and certain goods into the store through the coal-hole, and for carrying to the street the ice and snow which accumulated on the roof of the L in the rear, and for going on to the roof of the L to make repairs and to raise the windows for air, as well as for the purpose of passing back and forth between the premises of the plaintiff and another store on Tremont Street, which was carried on by one of the plaintiffs' lessees during his occupation of the plaintiffs' premises. There was also evidence tending to show that the proposed alterations would destroy the use of the rear part of the plaintiffs' building and the use of the passageway, and that in winter the steps leading down into the excavation would be rendered dangerous by the accumulation of ice caused by the drippings from the roofs of the buildings on either side.

*F. A. Perry*, for the defendant, Reuben Greene.

*J. C. Gray & R. S. Gorham*, for St. Paul's Church.

*W. A. Hayes*, (*H. M. Williams* with him,) for the plaintiffs.

HOLMES, J. This is a bill in equity, brought to restrain the defendants from changing the grade of a passageway. The defendants appeal from a decree for the plaintiffs, and the case is before us on agreed facts and evidence. The questions are whether the plaintiffs have lost by abandonment a right which otherwise they are admitted to have, and whether the contemplated change would interfere with the plaintiffs' rights. The facts which are material to our decision are not disputed. The plaintiffs' title is derived from one who owned both the dominant and servient estates. His deed conveyed the easement in question in the following words: " the right of use in common with the abutters thereon of a passageway on the southeast boundary as now laid out, about five feet wide, for any and all lawful purposes, with the express understanding that said passageway shall be maintained and supported at the common expense of all the abutters thereon." The southeast boundary was described in the same deed as " a line running longitudi-

nally through the centre of the brick wall betwen the premises hereby conveyed and the adjoining estate, about seventy feet." This was is 1833. The first description of the premises by eye-witnesses is as they were in 1866. At that time there was a dwelling-house on the front of the plaintiffs' land, with a yard in the rear, and a continuous brick wall on the southeast boundary. The only access to the passageway was by a gate through the wall of the yard.

In 1866, the defendant Greene, having bought the adjoining land, lowered the passageway about three and a half feet, leaving the plaintiffs' door in the air. Thereupon the plaintiffs built an L, covering their whole yard, and built up the wall solid, and there has been no gate there since. This is relied on as an abandonment. In the same year they opened a coal-hole ten inches by twelve through the wall of their main building on the passageway, but we assume that, if this was wrongful originally, no right to maintain it has been acquired by lapse of time.

The defendants, assuming the state of things in 1866 to have been the same as that in 1833, say that, while a right to pass through the gate may have been granted by implication, the plaintiffs' predecessors got no right to make any other aperture through the party wall, and had no right of way over the six inches, or whatever it may have been, covered by one half of that wall and belonging to the defendants' predecessor. This is tacitly assumed as equivalent to the proposition that the only right in the passageway was in connection with the gate, and the conclusion is drawn that when the gate was closed the easement was abandoned.

Admitting the defendants' assumption as to the facts to be correct, we cannot construe the plaintiffs' rights so narrowly. Whether under such circumstances they had the right to make reasonable apertures, we need not consider further than to say that cases as to party walls not bounding passageways are not conclusive. But we cannot admit that, if in any way the wall should be removed in whole or in part, it would be wrongful in the plaintiffs to pass from their land to the passageway over any part of the land where the wall had been. At all events, and even if the plaintiffs had no right to enter the passageway

except through the gate or at the end, once in the passageway their use of it would be rightful, even if they had passed through the wall in an unauthorized way. See *South Metropolitan Cemetery Co.* v. *Eden*, 16 C. B. 42. It follows that, if making the coal-hole was unauthorized, and every use of it is a trespass on the land covered by the party wall, still the plaintiffs have been using the way rightfully ever since they closed the gate. They have done it openly, and in a way known in fact to the dominant owner. Therefore the finding that the passageway has not been abandoned was fully justified, and it is further supported by the evidence of other subsidiary uses made of the way. We may go one step further still. If the use of the coal-hole was not only unlawful itself, but made the use of the passageway in connection with it unlawful, nevertheless such a continuous use of the passage, with the knowledge and against the will of the owner of the fee, was notice to him and to all concerned that the plaintiffs' claims on the way were not abandoned. See *Hayford* v. *Spokesfield*, 100 Mass. 491, and cases cited.

The Wardens and Vestry of St. Paul's Church, and their tenants, Shepard, Norwell, and Company, seek to better their case by the fact that the latter have built upon a plan which requires the lowering of the passageway. But if the plaintiffs were required to take any notice of acts done by strangers outside the servient land and in no way interfering with the plaintiffs, the coal-hole was notice to these defendants, as well as to the servient owner, that they built at their peril. No question of laches apart from abandonment is open, nor does it appear that there were any.

It is settled that, if the plaintiffs had a right of way, the defendants have not a right to make any change in its grade which will make the way less convenient to any appreciable extent. *Killion* v. *Kelley*, 120 Mass. 47, 52. *Kelley* v. *Saltmarsh*, 146 Mass. 585. *Nute* v. *Boston Co-operative Building Co.* 149 Mass. 465, 471. It is found that the proposed change would interfere with the plaintiffs' rights, and we are of opinion that the defendants ought not to be allowed to make a compulsory purchase of the right to interfere with them.

*Decree for plaintiffs.*