ANNA S. ROTCH, In Equity,

vs.

JOHNSTON LIVINGSTON, and others.

91   461
f103   161

SOPHIA B. THAYER vs. SAME.

Hancock.    Opinion April 21, 1898.

*Way.    Easement.    Change of Location.    Costs in Equity.*

A grantee of a road or way of a definite width, without restrictions, can use the entire specified width and is not confined to a road or path of a necessary or convenient width even.

Such a grantee is not restricted to the mere right of passage over the natural surface of the land within the boundaries of the way, but can construct over the entire width a road suitable, in material, grade, surface and other respects, for the convenient enjoyment of grant according to attendant circumstances.

Any one of several owners of such a road or way may, at his own expense at least, fit the way for his own convenient use, but not to materially impede any other owner in his convenient use of the same way.

When all the owners of the easement of such a way have constructed through the middle of the way a narrower road of an agreed grade, material and surface, without stipulating that such road shall not thereafter be widened, a subsequent widening of such road by any easement owner even to the full width of the way, with same grade, material, etc., is, in the absence of qualifying circumstances, a reasonable exercise of his right.

Where the owners of the land and the owners of the easement of a way of definite width and location upon the earth's surface become parties to an indenture, for the declared purpose of changing the location of a part of the way, such indenture will not be construed as abridging or enlarging the extent of the easement originally granted unless such purpose clearly appears from the whole instrument and attendant deeds, etc., even though the words of the grant of the easement in the new location read by themselves might seem to confer a greater or less easement than was originally granted.

In amicable though contentious suits in equity costs will not ordinarily be awarded against either party.

ON REPORT.

These were bills in equity, heard on bills, answers and testimony.

The purpose of the bills, both being alike, was to restrain the defendants from excavating, grading and draining and also building a sidewalk upon a strip of land ten feet wide in front of the plain-

tiffs' premises and being a part of a private way fifty feet in width as originally laid out by the former owners, and known as the "Livingston Road" at Bar Harbor. This ten-foot strip of the plaintiffs' land lies within the fifty-foot locus and between the thirty-foot finished road and the plaintiffs' southern line.

The allegations of the plaintiffs' bill were in substance as follows:

1. That the defendants have not and never had more than mere surface rights, i. e. rights to pass and repass over the natural surface of the ground.

2. That the defendants have not a right of way fifty feet wide but only a right of reasonable width within the limits of the fifty-foot wide Livingston Road, and that thirty feet is a reasonable width and is all that they are entitled to as a way.

3. That in 1893, when the thirty-foot finished road was built, a contract was entered into whereby the defendants agreed that the portion of the way not then wrought should remain intact for the purpose of ornamentation by the land owners.

4. That if there was no such contract, there were certain representations and conduct on the part of the defendants which estop them from disturbing the surface of that portion of the way outside the thirty-foot wrought track.

The defendants answered in substance:

1. That their rights are not confined to the surface but that they have a right to fit the way reasonably for travel.

2. That their way is not one merely of reasonable width. They claim to have a right of way over the whole of the Livingston Road.

3. That there was no such contract as the complainants claim.

4. That there were no such representations or conduct as the complainants rely upon as a basis for an estoppel.

Briefly stated, the case shows that the Livingston Road is a private way fifty feet wide, leading from Main street easterly to the property of the late Charles J. Morrill. The centre line of this road, 1100 feet in length, throughout its extent is the northern

line of land of the defendant Livingston, and is the southern line of three lots, one owned by each of the plaintiffs, and one owned jointly by the defendants How and Bates. All the above named persons together with the defendant John S. Kennedy, and other persons not parties to the suit, have rights of way in this road.

The deeds establishing the way, and under which all the parties claim, provide that the road was to be made and maintained at the joint expense of the parties entitled to use it.

In 1893, Messrs. Livingston and How and Mrs. Thayer and Miss Rotch joined in building a thirty-foot track in the middle of the fifty-foot way. Of the cost of this track Mr. Livingston paid one-half, Mr. How about three-tenths and the plaintiffs about one-tenth each.

In 1891, Mr. Livingston had conveyed a part of his property to the defendant John S. Kennedy and had agreed with Mr. Kennedy to build this way throughout its whole width.

In 1896, Mr. Livingston for the purpose of improving his property and also for the purpose of carrying out his contract with Mr. Kennedy determined to complete the building of the road and so informed the plaintiffs. They were unwilling to join, and Mr. Livingston offered to pay the whole expense. They denied his right. He declared his purpose to fit the remainder of the way for travel. Whereupon the plaintiffs brought these suits asking that the defendants be enjoined.

The material facts are stated in the opinion of the court.

*H. E. Hamlin and H. G. Vaughan,* for plaintiffs.

*L. B. Deasey,* for defendants.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

EMERY, J. These are two similar suits in equity reported to the law court for determination upon the bills, answers and evidence. Some technical objections were at first taken upon either side, but they have all practically been waived in the desire of the parties for the opinion of the court upon the merits, to the consideration of which we at once proceed.

The scene is Bar Harbor, an extensive summer resort containing many beautiful and costly summer residences. The parties are the several owners of a group of such residences, or residence lots, served by a private road now called the "Livingston Road" leading from the highway called "Main Street" or the "Schooner Head Road" about 1100 feet easterly to the "Morrill place" so-called. The controversy is over the respective rights and duties of the parties in both the soil and the use of this private road.

The tract of land formed by the various lots now concerned in these suits was formerly known as the "Snow Farm," bounded on the west by the highway then called the "Schooner Head Road" and now sometimes called "Main Street,"— and on the east by the bay or sea. The first division of the tract was made through mutual partition deeds dated Jan'y 31, 1879, by Messrs. Wigglesworth and Da Costa, the then sole owners in common. Mr. Wigglesworth took the northern and Mr. Da Costa took the southern part of the tract. In these deeds was first created and established by grant the private road afterward called the "Livingston Road," and now to some extent the subject matter of these suits. The divisional line of the partition was declared to be "the middle of a road fifty feet wide to be laid out one-half over the land of each of the parties hereto," and extending from the Schooner Head road easterly 1100 feet to a point which is now near the westerly line of the "Morrill place."

The two dividing parties then in the same deeds mutually reserved and conveyed to each other and the heirs and assigns of each "the right to pass and repass in and over, and to lay drains and water pipes under that part of the granted premises which is included in said proposed road. . . . . the said road to be made and maintained at the joint expense of the parties entitled to use the same."

A plan of the division showing the outer boundaries, the divisional line, and the proposed private road was made a part of the deeds and was recorded with them. On this plan the proposed road was laid down as "50 ft. wide" and 1100 ft. long.

The track thus divided was in course of time much sub-divided by different and successive conveyances upon each side and to the

east of the road thus established, until in the early part of the year 1892 the various lots and their owners were as roughly indicated upon this sketch. viz:—

In all these subsequent conveyances the grantor's rights and duties in this private road were transferred to the successive grantees, so that early in 1892 each owner indicated on the foregoing sketch had succeeded to the rights and duties of Wigglesworth and Da Costa as declared in their partition deeds of Jan'y 31, 1879, above referred to. Mr. Livingston, however, had engaged with Mr. Kennedy, his direct grantee, to build the road for him.

At this stage all the parties interested in either the fee or the use of the road became parties to an instrument of indenture drafted and dated March 1, 1892, but not finally executed and delivered

till the summer of 1893.   In this indenture were recited:— (1) that the parties thereto were "all the parties interested, either as owners of the fee, or of easements, in a certain way fifty feet wide . . . . extending from the Schooner Head road easterly to land of Chas. J. Morrill, being the same way mentioned in the partition deeds" of Wigglesworth and Da Costa above noted; (2) that the parties had "agreed to change the location of said right of way, in part, to wit: in that part extending easterly from the western line of land of Sophia B. Thayer produced southerly, to the eastern line of land of Anna S. Rotch produced southerly" so that the centre line of such part of the way as was agreed to be changed in location should begin to diverge a little southerly at the western line (extended) of the land of Mrs. Thayer, and strike the eastern line (extended) of land of Miss Rotch sixty-seven feet southerly of the old centre line; (3) that Mr. Livingston (the owner of the land taken to make the above change in location) conveyed to all the other parties and their assigns as appurtenant to their several lots "a right to pass and repass over, and to lay drains and water pipes under, a strip of land fifty feet wide in every part, the centre line of which is described" (as above recited,) but with the stipulation that "said right, privilege and easement, however, shall be held and enjoyed by said parties, [all the other parties] in common with the party of the first part, [Livingston] his heirs and assigns owners and tenants of any lands to which said old way is appurtenant, and in common with any and all persons lawfully entitled to similar rights;" (4) that all easements in the land in front of Mrs. Thayer and Miss Rotch not included in the new location were extinguished.   Accompanying this indenture was a plan of the way upon which were placed the words "Right of way 50 ft. wide."

Mr. Livingston owning the land on the south side, and Mrs. Thayer and Miss Rotch severally owning lands on the north side opposite the land of Mr. Livingston, mutually executed deeds in confirmation of this indenture, by which deeds each became the owner of the fee to the centre line of the way in front of his land, that line being described in the deeds as "the centre of a way fifty feet wide created by a deed of indenture," viz:—the one above named.   In these deeds it was stipulated "that the way fifty feet

wide lying along the line between the land of each opposite party shall be built and forever maintained and kept in repair at the joint and equal expense of the owners of the" opposite abutting lots. Mrs. Thayer and Miss Rotch had each built a summer residence upon her lot some years before this. As a consummation of these various arrangements, in 1893 the whole way from the Schooner Head Road to the new eastern end was carefully run out fifty feet wide upon the surface of the earth, and the side lines of the way were plainly marked with stone posts and iron bolts at frequent intervals. Release deeds were interchanged by the opposite proprietors in accordance with this running out and marking of the way. The situation at this time at the end of these transactions is roughly indicated upon the following sketch, viz:—

Mr. Kennedy by this time had began to build a costly residence and to make extensive improvements on his lot, and desired to have this road opened and constructed out to the Schooner Head Road, and called upon Mr. Livingston to have it done according to his obligations assumed. Up to this time whatever use of the way was made was simply over its surface without any grading or other road making. The parties interested had one or two conferences upon what sort of a road should be made,—its width, grade, surface and cost. Those bound to build the road finally, in October 1893, made and signed a written contract with a road builder for him to construct a road bed thirty feet wide through the middle of the fifty-feet way, and of a specified character and grade which involved making, among other cuts and fills, a cut about four feet deep in front of the lots of Mrs. Thayer and Miss Rotch. A strip ten feet upon each side of the road bed was to be left intact by the road builder, who was also to leave alone the shrubs and trees on these ten feet strips. The road was built the same fall according to this contract and was paid for by the signers of the contract according to their several obligations. A strip of land ten feet wide upon each of the made road bed was left intact.

In 1895 Mr. Kennedy desired to have the entire fifty feet of width of way made into a road bed, throughout its entire length, and called upon his grantor, Mr. Livingston, to have it done, claiming that to be his right. Mr. Livingston, not questioning Mr. Kennedy's claim upon him, first widened out the road upon the south side next his own land by extending the road bed with the same character and grade over the south ten feet strip. He then proposed at his own expense to widen out the road bed in the same manner over the northern ten feet strip so that the entire fifty feet of width of way should be utilized as a road or street. This would involve disturbing the surface and cutting it down some four feet in front of the lots of Mrs. Thayer and Miss Rotch, and would bring the north side of the wrought road bed ten feet nearer to their residences. Both Mrs. Thayer and Miss Rotch deny the right of Mr. Kennedy or Mr. Livingston even at their own expense to thus widen out the road over the northen ten feet

strip left in front of their lots; and also deny their right to even pass and repass over the surface of that strip. The interposition of the court sitting in equity is invoked.

Each plaintiff bears two distinct kinds of relation to the defendants. Each is the owner of the fee of the ten feet strip in front of her lot, and is also a co-owner with the others of all the rights of way in the entire fifty feet way. Each is at once a land owner, and an easement owner. It will be more convenient to consider these relations separately; and first, that between the plaintiffs as land owners and the defendants as easement owners.

I.  *a* As land owners, as the owners of the fee of the ten feet strip in front of their lots, the plaintiffs claim as a postulate that the rights of the defendants in those parts of the ten feet strip, were first created by, and have their sole origin in, the indenture of March 1, 1892, and are limited to such as are expressed in the language of that indenture, viz:—"a right to pass and repass over, and to lay drains and water pipes under, a strip of land fifty feet wide in every part," describing it. From this postulate they argue with logical force and with apposite citation of authorities that the easement of the defendants and the others in front of their lots, at least, is merely a right to pass and repass in some convenient line, or path, or road of convenient width within the fifty feet strip, and is not a right to use the whole fifty feet of width as a road, at least in the absence of any necessity therefor. They liken the easement to a right to pass and repass over a field or a farm where it would be conceded that the right is only of passage in a road of convenient location, grade and width, and is not a right to make the whole field or farm into a road bed. Their conclusion is that the thirty feet road already made fully answers every demand of necessity or reasonable convenience, and confines the rights of the defendants to that road, and frees the ten feet strip, for the present at least, from any easement even of mere passage.

But we cannot accept the plaintiffs' postulate that the sole origin of the defendants' rights in the ten feet strip in front of the plaintiffs' lots is in the language quoted from the indenture of March

1, 1892.   The purpose of the indenture is declared by its own words to be,—not to create new rights of way, or to enlarge, abridge or extinguish rights of way already possessed,— but merely to change in part the location of their exercise.   This was the evident and sole purpose.   The whole way, which was the subject matter of the indenture, was 1100 feet long.   The change of location affected only about 400 feet, and that only to a trifling extent. We find in the indenture no purpose expressed or implied to make the easements in the 400 feet less or different from those in the remaining 700 feet.   It was still a continuous way 1100 feet long and of uniform width throughout.   From the recitals already given from the indenture itself, we think it clear that the limitation or extent of the easement, within both the changed and unchanged location of the way, is to be sought for in the deeds originally creating the way and the easement, and in the subsequent and contemporaneous deeds and acts of the parties, as well as in the indenture changing the location.

In the partition deeds of Wigglesworth and Da Costa, in 1879, it was declared that " a road fifty feet wide " [was] " to be laid out," and that " said road [was] to be made and maintained at the joint expense of the parties entitled to use the same."   Upon the partition plan recorded as a part of these deeds the road is laid down and marked " proposed road 50 ft. wide."   In the deeds under which plaintiffs claim title, the southern boundary is declared to be " the northern line of a road or way fifty feet wide."   To the deed from Wigglesworth to Mrs. Thayer is attached a plan, upon which is shown the way, with the words — " Road to be made 50 ft. at proportional expense of abutters."   In the indenture itself the subject matter is described as " a certain way fifty feet wide . . . . : being the same mentioned in " the partition deeds.   In the deeds between the plaintiffs and Mr. Livingston, executed about the time of the indenture and referring to it and designed to carry out its provisions, the south line is " the centre of a way fifty feet wide " and the parties " agree that the way fifty feet wide lying along the line between (their lands) shall be built and forever maintained."

The parties, to this bill at least, had each of the outside lines of this "road" or "way" marked upon the surface of the earth by a row of stone posts and iron bolts, the two rows of monuments being set fifty feet apart throughout the entire length of the way in both its changed and unchanged location.

The foregoing descriptions of the easement now appurtenant to the various dominant lots or estates, as interpreted by the acts of the parties, show the easement to be not merely "a right to pass and repass over" in some reasonably convenient direction, in some convenient road somewhere within the limits of "a strip of land fifty feet wide." The easement described and granted is clearly a right to "a road (or "a way") fifty feet wide." That "road" or "way" has been actually located and permanently marked, and is in fact fifty feet wide upon the surface of the earth. In the language of the partition deeds, the road has been · "laid out" fifty feet wide.

When a public road or way has been "laid out" of a specified width by the proper authority, the public has the right to use the entire width of the whole location to its outermost limits, though the town or other public agency charged with the duty of making a road within the location need not make a wider road than is safe and convenient for travelers. The duty of the town is not co-extensive with the rights of the public. *Stinson* v. *Gardiner*, 42 Maine, 248; *Dickey* v. *Maine Tel. Co.*, 46 Maine, 483; *Parsons* v. *Clark*, 76 Maine, 476, 479.

We think the right of the grantees of a road or way thus "laid out" by deed and actually located on the surface of the earth by the land owners, is as extensive as the right of the public in a road or way "laid out" by proceedings in condemnation for a public way. In the one case the land is granted for a way—in the other the land is taken for a way. The entire width (here fifty feet) is in both cases appropriated for the way, to be used in its whole extent if desired by those for whom the way is "laid out." We see no difference in principle between the rights of the owners of the easement in the two cases.

This similarity of right as to extent of use has been recognized

by the courts. In *Farnsworth* v. *Taylor*, 9 Gray, 162, the land owner had lotted his land and made a plan showing a street 70 feet wide in one place. Forty feet only of this width were afterward taken for a public street, leaving the remaining thirty feet of width still a private way. It was held that the owners of the lots could use the entire width of 70 feet. In *Tudor Ice Co.* v. *Cunningham*, 8 Allen, 139, the grant was of "a right of way . . . . to a street forty feet wide . . . . and in, over, and through said forty feet strip." The court declared the case to be free from all doubt,—that the grantee had a right in the entire space of forty feet width. In *Bartlett* v. *Bangor*, 67 Maine, 460, the land owner had lotted his land and laid out a street for the accommodation of the lots. He afterward sold some of the lots according to a plan showing the street. Later the city laid out a public street over this private street, taking the whole width, and the owner of the fee claimed damages. It was held that he could have no more than nominal damages. The decision necessarily implies that the owners of the easement under the deed had the right to use the entire width of the private street, and were not confined to a mere reasonable path or road. The court quoted the case *In re Lewis Street*, 2 Wend. 472, where it was held that the grantees of a right of way of a specified width have an easement in the way to the full extent of its dimensions. In *Heselton* v. *Harmon*, 80 Maine, 326, the grant was of a parcel of land bounded on the east "by a strip of land thirty-two feet wide reserved for a street and no other purpose." There was no suggestion that the grantee was confined to anything less than the entire width. In *Herman* v. *Roberts*, 119 N. Y. 37, the grant was of a right of way "over the land [of the grantor] . . . . on a line now staked out to be forty feet wide." It was held that the grantee was not confined to any wrought or convenient road, but had a right "to a free passage over such portion of the land enclosed as a way, as he thought proper or necessary to use." See also *Bump* v. *Sanner*, 37 Md. 621; Jones on Easements § 305.

In the cases at bar we must hold that the defendants, and all the other owners of the easement, have under their grant the full

right to use the entire width of fifty feet including the ten feet strip in front of the plaintiffs' lot for purposes of passage at their discretion, and are not limited in such right to what is necessary or convenient. They hold by express grant and not by implication from necessity or convenience.

*b* The next question is whether the defendants as owners of the easement have the right (at their own expense, not calling upon the other owners for contribution) to change the surface of the ten feet strip and make it into a road by filling depressions—cutting down ridges, etc., etc. The plaintiffs contend that, even if the right of passage is unlimited, the right to change the surface is limited to what is necessary to make a convenient road, and that the present thirty feet road is admittedly ample for all present needs.

In the case of a public way of definite width, whether granted by the land owner to the public or taken by condemnatory proceedings, while of course each individual of the public cannot construct a road to suit himself, it has never been questioned that the town or other public agency charged with the duty of opening and making roads can at its pleasure, in the absence of statutory restrictions, construct the road over the entire specified width. While it need not ordinarily make the road of more than safe and convenient width for travelers, it can in behalf of the public which it represents, make the road the entire width of the grant or location, changing the entire surface therefor, without consulting the land owner. The statute has made provision for damages to the land owner in some cases of change of grade, but that does not interfere with the town's right. We find no cases denying such right to the proper public agency. Its existence seems to be assumed. *Old Colony Railroad Co.* v. *Fall River*, 147 Mass. 455; *Hovey* v. *Mayo*, 43 Maine, 322; *Cyr* v. *Dufour*, 68 Maine, 492; *Briggs* v. *L. & A. Street R. R. Co.*, 79 Maine, 363; *Burr* v. *Stevens*, 90 Maine, 500. In *Wellman* v. *Dickey*, 78 Maine, 29, the town had not acted.

A similar easement granted to a less number than the public, granted to a few determinate persons, is not by that circumstance

abridged in extent.   The grant itself is as broad and extensive in the one case as in the other.   In either case the grant is of a road way of a specified width.   In *Heselton* v. *Harmon*, 80 Maine, 326, above cited, the grantee of the way made the whole width of it into a road, and was held to be within his right.   Indeed the right of the grantee of a way of a specified width to fit the entire width for use, seems to be generally conceded.   *Appleton* v. *Fullerton*, 1 Gray, 186; *Brown* v. *Stone*, 10 Gray, 61; *Herman* v. *Roberts*, 119 N. Y. 39.   If the grant is of the right to use the whole of a specified width of land for a road it follows logically, in the absence of restrictive words in the grant, that the grantee can fit the entire width for use. · His right to make a road is as wide as his right to a road so far as width of road is concerned.   We do not find any restrictive words in the grant in these cases, and our conclusion is that the defendants have the right to fit the ten feet strip into a suitable road in connection with the road already made.

*c* The plaintiffs again contend, however, that, even if the defendants and the other owners of the easement have the right to change the surface of the ten feet strip in order to make it into a road, they cannot do so to the extent proposed, cutting it down four feet in front of their lots.   They argue that so much cutting is not necessary to fit the ten feet strip into a road and will injure the value and convenient use of their lots—and hence that the easement owner must be content with a less change in the surface. We have no occasion now to determine the general question as to which party, the land owner or the easement owner, can fix the grade and character of a private road, for in these cases a grade and general scheme of road seem to have been agreed upon between the parties, and thirty feet of the width have been fitted to that grade and scheme.   The defendants are not proposing to vary that grade or scheme but only to make this remaining ten feet strip conform to it.   We think they should not be restrained from proceeding that far.   It seems clear that the sides of a road should not be higher than the centre.   We may say also that it is not made clear to us that the lots and residences of the plaintiffs would be substantially injured in use or value by cutting down the

ten feet strip to the level of the present wrought road. Their houses and lawns will be less exposed to the passers by, while their own access to the road will not be perceptibly more difficult.

II.   We come now to consider the effect of the proposed action of the defendants upon the rights of the plaintiffs as co-owners with the defendants and others in the easement itself.   The law does not require unanimity of opinion in the co-owners of a way as to the extent and character of the road to be built.   No one co-owner can effectually block the opening, making or improving the common way by objecting to the particular mode or scheme adopted by the others.   Each owner can (at least at his own expense as is pro- posed in this case) use the entire width of the way and can fit it all for use at his reasonable discretion so long as he does not unrea- sonably impede any other co-owner in his use.   This principle is recognized in the cases cited by the plaintiffs.   *Killion* v. *Kelley*, 120 Mass. 47; *Kelley* v. *Saltmarsh*, 146 Mass. 585; *Nute* v. *Boston Cooperative Building Co.*, 149 Mass. 465; *Vinton* v. *Greene*, 158 Mass. 426.   In all these cases the proposed change was for- bidden upon the sole ground of the manifest detriment to the objecting party in his own use of the way.   We find no case where the court interfered with the proposed change or use unless it was made to appear that the objecting party would be seriously incon- venienced in his own use of the way.

In the cases at bar the evidence does not show that the plaintiffs' use of the way itself would be substantially abridged or hampered by the proposed widening at the same grade from thirty feet to fifty feet.   Their access to the widened road may be a little steeper in grade,— but that is not shown to be appreciably more incon- venient.

III.   The plaintiffs, however, take yet another line of defense against the proposed action of the defendants.   They claim that, whatever the original rights of the various parties under the deeds, plans, etc., the whole matter of use, width and grade was finally determined and established at the two conferences above noted of the owners of the land and the easements in the summer

and fall of 1893, with the stipulation or understanding that such determination should be final at least until new conditions arose which have not yet appeared;— that by their language and conduct, at and after these conferences, the defendants are estopped from their present proposed action;— that at those conferences the plaintiffs could have successfully insisted upon a narrower and surface road and only gave way upon the assurance of the defendants that the ten feet strip should be left intact for the benefit of the plaintiffs.

There was much discussion in the briefs of counsel as to whether such a stipulation or assurance was properly evidenced under the statute of frauds, and was binding even if properly evidenced. There was also much discussion upon the principles of estoppel. We think, however, we have no occasion here to consider these questions. The burden of proof was plainly upon the plaintiffs to establish the necessary propositions of fact, and upon a careful reading of the evidence with the valuable aid of the exhaustive analysis made by counsel, we are not satisfied that the defendants assented in fact to such a stipulation, or by their language and conduct gave the plaintiffs cause to believe that they so assented. The conferences appear to us to have been of parties, not divided between land owners and easement owners, but of parties all entitled to use the road, some of whom were bound to bear or contribute to the expense of building it. The objections to a wide way and an easy grade seem to have been put mainly upon the ground of the expense. The question principally debated was as to what could be required of the road builders by the road users. The claims of the land owners, as such, were discussed, but incidentally and not with sufficient insistence to make it clear that the defendants understood or should have understood that unless they yielded all claims to the ten feet strip only a narrow surface road would be opened by the land owners. We do not think that the belief of the plaintiffs is well founded. We cannot find that either Mr. Kennedy or Mr. Livingston, or the authorized agent of either of them, said or did anything which would justify the plaintiffs in assuming that either of them intended to or would finally surrender any of his rights in the remaining part of the way.

For the same reason the plaintiffs cannot successfully invoke any of the principles of estoppel. Neither of them has made such expenditures upon the ten feet strip with the knowledge and acquiescence of the defendants as to make it inequitable that they should now assert their rights. One of the plaintiffs, soon after the road was made, put a fence out to enclose the ten feet strip within her lot, but its removal was promptly requested by Mr. Kennedy and his request was complied with.

IV. Mr. Livingston has made a sidewalk upon the south side within the fifty feet way, and is proposing to construct a similar sidewalk upon the northern side after cutting the northern ten feet down to the grade of the road. We have understood the plaintiffs' objection to be solely to the cutting down the strip to that level. We have not understood them to object to the sidewalk if the strip is to be cut down.

Whether or not Mr. Livingston, Mr. Kennedy, or any one or more co-owners of the easement, can require of the other co-owners to assist in widening or improving the road is a question which does not arise in these cases. Nothing is here asked by the defendants of any other co-owner. Mr. Livingston, for himself and Mr. Kennedy his obligee, is proposing to act at his own expense only.

Our conclusion is that the defendants' proposed action so far as shown in these cases is within their legal rights and that both bills must be dismissed; but, since the suits are amicable though contentious and both sides are neighbors and friends, we think no costs should be recovered.

*Bills dismissed.*