CLAUD H. HULTZEN ET AL.

*vs.*

GERTRUDE WITHAM

BEATRICE C. STAPLES

*vs.*

GERTRUDE WITHAM

Cumberland.   Opinion, January 25, 1951.

*Harry C. Libby,*
*Philip F. Thorne,* for plaintiffs.

*Frank P. Preti,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

MURCHIE, C. J.   Bills of Exceptions of identical import, filed by the defendant, in each of these cases, challenge the propriety of the direction of verdicts for the plaintiffs, for nominal damages, on one of two counts, in each declaration, alleging that the defendant obstructed a right of way forty feet wide, identified as Morning Street Extension, by the construction of a sea wall across the full width thereof.   On a second count, in each declaration, alleging the obstruction of another right of way, identified as Ashton Street Extension, by piling stones therein, motions of the plaintiffs to discontinue were granted prior to the direction of the verdicts.

The two rights of way are parts of strips of land delineated as streets, giving access to the shore or beach, on a "Plan of Lots at Higgins Beach," in the Town of Scarborough, recorded in the Registry of Deeds for Cumberland County on June 10, 1913, referred to hereafter as the "Plan."   The plaintiffs assert their claims as owners of lots sold by reference to the Plan.   A copy of a portion of it, introduced in evidence as Plaintiffs' Exhibit No. 1, is repro-

duced below, in its essential parts. It is stipulated that Bay View Avenue, shown thereon, runs approximately east and west.

|  | 89½ | Ashton Street | 94 | 115 | Morning Street | 120 | 141 | Vesper Street | 146 |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  | 93 | 116 |  | 119 | 142 |  | 145 |
|  |  |  | 92 | 117 |  | 118 | 143 |  | 144 |

BAY VIEW AVE.

|  | 190 | 191 | 192 | 193 | 194 | 195 |
|---|---|---|---|---|---|---|
|  |  | 200 | 199 | 198 | 197 | 196 |
|  |  |  | 201 | 202 |  | 204 |

All the strips of land delineated as streets on the Exhibit, and Bay View Avenue, are now public highways except the parts of Morning Street and Ashton Street which lie southerly of said Avenue. Such parts of Morning Street and Ashton Street are the rights of way referred to in the declarations, and in the evidence, as extensions. The beach lies southerly of Lots Nos. 201, 202, 203 and 204. The lot involved in the Hultzen case is not shown above, but is identified as Lot No. 109 on the Plan. The evidence makes it plain that it lies a short distance northerly of Lot No. 115 and fronts on Morning Street. The lot involved in the Staples case is Lot No. 194. The defendant is the owner of all the lots fronting on Morning Street Extension and on the easterly side of Ashton Street Extension.

The parties have stipulated that they have equal rights of way in both extensions, in common with other owners and subject to common usage. For an accurate determination

of their rights, reference should be had to cases involving the sales of lots according to recorded plans. See *Sutherland* v. *Jackson*, 32 Me. 80; *Warren* v. *Blake*, 54 Me. 276, 89 Am. Dec. 748; *Young* v. *Braman*, 105 Me. 494, 75 A. 120; *Webber* v. *Wright*, 124 Me. 190, 126 A. 737. For present purposes we assume the rights to be as the parties have stipulated.

That one injured in his "comfort, property, or the enjoyment of his estate by a common and public or a private nuisance" may recover his damages against the person responsible therefor is the express mandate of R. S., 1944, Chap. 128, Sec. 16. Section 7 of that chapter, defining certain nuisances, includes among them "the obstructing or encumbering by fences, buildings, or otherwise, of highways, private ways, streets, alleys," etc. The defendant admits that she constructed a sea wall across the full width of Morning Street Extension, at or about the point which marks the line between the southerly limit of Lots Nos. 201 and 202 and the beach. She asserts that it constitutes neither an obstruction nor a nuisance, relying on the fact, in support of which she presented a considerable volume of testimony, that the extension, as a private way, was unsuitable for any use prior to the construction of the sea wall, and that in the construction of it she provided steps for the use of pedestrians. She admits that the extension is not now available for vehicular use in passing to and from the beach. She raised the grade of it three feet, or to the approximate level of Bay View Avenue, after the wall was built, so that a single step is required to pass over it to the shore, although several are required on the beach side. The evidence presented on her behalf tends to prove that vehicular traffic upon Morning Street Extension, if ever possible, had ceased to be so some time prior to the building of the sea wall. Whatever the fact may have been when the Plan was made and recorded, the sea wall eliminated the possibility of the passage of vehicles to the beach over

Morning Street Extension, if it had not been eliminated theretofore. The steps provided for the passage of pedestrians are inadequate to permit the passage of a vehicle of any kind.

A ruling of law that the question of fact concerning the usability of a right of way, that is not a public highway, for any particular use or uses, is not in issue in a case seeking the recovery of damages for an alleged obstruction of it, is implicit in the direction of the verdicts. There was a very definite conflict of evidence on that factual issue, applicable to a period of twenty years or more, which, if material, could only be resolved by a jury. *Jewell et al.* v. *Gagne*, 82 Me. 430, 19 A. 917. It is well established, however, that a verdict for one party should be directed whenever one returned for the other could not be sustained. *Jewell et al.* v. *Gagne, supra; Moore* v. *McKenney*, 83 Me. 80, 21 A. 749, 23 Am. St. Rep. 753; *Inhabitants of Woodstock* v. *Inhabitants of Canton*, 91 Me. 62, 39 A. 281; *Inhabitants of Wellington* v. *Inhabitants of Corinna*, 104 Me. 252, 71 A. 889. The ruling was proper if the factual issue is not material. If it is material, it is well established that all the evidence pertinent to it must be viewed in the light most favorable to the defendant, as the party against whom the verdicts were directed. Such is always the rule in testing the propriety of directed verdicts. *Heath* v. *Jaquith*, 68 Me. 433; *Lewiston Trust Co.* v. *Deveno et al.*, 145 Me. 224, 74 A. (2nd) 457.

There has been no occasion heretofore in this jurisdiction to resolve the issue which, restated in its simplest terms, is whether a strip of land laid out, and intended for use, as a right of way, is encumbered or obstructed, as a matter of law, by the erection of a barrier across it, by a co-owner of the right of way, whether or not such erection interferes with any use for which the way was, or might be made, susceptible.

These cases involve a *private* way as distinguished from a *public* way. Neither involves the respective rights of owners of dominant and servient tenements. On the record, neither of the plaintiffs, nor the defendant, have, or ever have had, any title to the fee in Morning Street Extension. *Sutherland* v. *Jackson*, *Warren* v. *Blake*, and *Young* v. *Braman*, all *supra*. The only rights of either or any of them in that extension are those of co-owners in common in an easement of passage over the same as owners of lots delineated on the Plan. Nor in the present cases are we presented with problems arising from a physical intrusion upon or physical obstruction of an easement by an absolute stranger to the title.

The defendant by her pleadings seeks to justify the building of the sea wall across Morning Street Extension at the sea-ward end thereof, the filling in of the extension behind said sea wall, and the raising of the grade thereof to the approximate level of Bay View Avenue, and her lots of land on both sides thereof, as necessary and lawful repairs of a right of way. In her brief statement she says that:

> "she, the said defendant, by reason of then existing conditions and attending circumstances was obliged to make necessary and lawful repairs, not only to preserve said way for all who had a right therein, but to make it convenient and passable without which repairs said way had become greatly deteriorated and would have become impassable and of no use or value to the said defendant in her occupation and use of the lots of land owned by her to which said right of way was appurtenant. Said defendant further says that by her actions she has materially improved said way as to make it more useful and beneficial to said plaintiff and all others having an interest therein."

As above noted, these actions are brought by co-owners of an easement against another co-owner. They involve the right of one co-owner, as against another, to make re-

pairs and improvements. The right of one co-owner in an easement to make repairs, as against the owner of the fee over which the easement passes, is not here in issue. Neither is the right of the owner of the fee to make changes or repairs within the limits of the way, as against the owner of the easement, in question. We are here concerned *only* with the rights of and between co-owners of the easement.

The general rules with respect to the right of one co-owner in an easement to repair and improve the same are well stated in 17 Am. Jur. 1005, Sec. 110:

> "Where there are several owners in common of an easement such as a private way, each owner may make reasonable repairs which do not injuriously affect his co-owners, but he cannot make any alteration of the course of the easement or any change in its grade or surface which makes it less convenient and useful to any appreciable extent to anyone who has an equal right therein."

This general rule was recognized in *Rotch* v. *Livingston et al.*, 91 Me. 461, 475, 40 A. 426, 432. It was there said that:

> "Each owner can * * * use the entire width of the way and can fit it all for use at his reasonable discretion so long as he does not unreasonably impede any other co-owner in his use. This principle is recognized in the cases cited by the plaintiffs. Killion v. Kelley, 120 Mass. 47; Kelley v. Saltmarsh, 146 Mass. 585; Nute v. Boston Cooperative Building Co., 149 Mass. 465; Vinton v. Greene, 158 Mass. 426. In all these cases the proposed change was forbidden upon the sole ground of the *manifest detriment* to the objecting party in his own use of the way. *We find no case where the court interfered with the proposed change or use unless it was made to appear that the objecting party would be seriously inconvenienced in his own use of the way.*" (Emphasis ours.)

The quotation *supra* from 17 Am. Jur. 1005, Sec. 110, is an almost verbatim quotation from *Killion et al.* v. *Kelley,* 120 Mass. 47, cited in *Rotch* v. *Livingston, supra.*

Whether or not the repairs made by one co-owner *unreasonably impede* another in his use of the way or *seriously inconvenience* him, in his own use of the way, depends upon the use to which the way is, or may be made susceptible. It is not a nuisance under R. S., Chap. 128, Sec. 7, for one co-owner of an easement of passage to make repairs or improvements in a private way which do not obstruct or interfere with any existing use thereof, or any potential use to which the way is susceptible or may be made susceptible. "The reasonableness of the improvements or repairs made by the owner of an easement of way is largely a question of fact." 17 Am. Jur. 1006, Sec. 111; *Guillet* v. *Livernois,* 297 Mass. 337, 8 N. E. (2nd) 921, 112 A. L. R. 1300.

As between co-owners in an easement of passage, in determining whether or not a way is, or may be made, susceptible for a particular use asserted by another co-owner, a jury should deal with actualities and not mere theories. Jurors may consider the practicability of subjecting a way to any proposed use, taking into consideration all existing factual questions. Among such questions, in these cases, are the actual location, the nature of the terrain, the soil, the exposure to, and action of, the sea, and whether or not if a usable way for vehicular traffic were constructed for passage to and from the beach, its reasonable permanence and stability could be assured. They may also consider the effect thereof on other uses to which the way might be subjected by abutting owners and others.

There was evidence in these cases from which the jury, if the issue had been submitted to it, could have found that Morning Street Extension, prior to the building of the sea wall, and the grading of the way between that sea wall and Bay View Avenue, had never been susceptible to, nor used,

nor usable for, vehicular traffic to and from Higgins Beach. There was evidence from which it could have found that without the work done thereon by the defendant the way never had been, and never would have been, of any practicable use as a way, other than as a mere footpath through shifting and changing sands, due to inundation and washing by the sea by recurrent and seasonal high tides. There was evidence from which it could have found that the way could not reasonably have been placed and maintained in a condition that would have made it susceptible to use by vehicular traffic to and from Higgins Beach. There was evidence from which the jury would have been justified in finding that without a sea wall across it the way would have continued to be washed and gullied from time to time by the sea, and have become of less and less use for any purpose whatever; and that even if it were put in a condition susceptible for use by vehicular traffic to and from Higgins Beach it could not be permanently maintained in that condition without constant repairs and renewals. There was no evidence that any co-owner had ever attempted to make any repairs or improvements to Morning Street Extension to make it available for vehicular traffic to and from Higgins Beach. These were all questions of fact for the jury, which the jurors were entitled to consider in determining whether or not the defendant had obstructed or interfered with any reasonable use to which the way was or could be made susceptible by the plaintiffs.

It must be remembered that in these cases we are dealing only with the respective rights of co-owners of an easement. Their respective rights as between themselves are relative, not absolute. That which might constitute an invasion or obstruction of an easement by an absolute stranger to the title, that is, by one without scintilla of legal right, in the easement, or in the fee, may well be within the right of a co-owner of the easement to make and maintain. *As against the stranger*, the right of every owner of the

easement to repel invasion thereof is absolute. *As between co-owners,* the rights to repair and improve, and the right to object to repairs and improvements, are only relative. Neither co-owner can interfere with the reasonable use of the way by any other for a purpose to which the same is or may be made susceptible.

In any given case, the determination of whether there has been such interference is a question of fact for the jury. In these cases it was likewise a question of fact for the jury whether the construction of the sea wall by the defendant was a reasonable method of insuring the continued use of Morning Street Extension as a way for the benefit of her own property on each and both sides thereof, to which it was appurtenant, as well as for others entitled to use the same. In determining that question, it must be remembered that the defendant had no right to make repairs or improvements within the limits of the right of way solely for the protection of her lots abutting thereon, as distinguished from improvements and repairs for the purpose of improving the way as such. In these cases the defendant's only right in the way is a right of passage over the same in common with others. Her right to make repairs and improvements is incidental to that use alone. Protective construction *designed solely for the benefit of her lots must be made within the boundaries thereof.* Cases involving the right of an abutting owner, who also owns the fee over which a common way passes, to make repairs or improvements within the limits of the way for the protection of his abutting land, not inconsistent with the rights of the common owners of the way, are clearly distinguishable. Here too the rights of the parties are relative, not absolute. Of course, repairs and improvements properly made to facilitate the use of the way, as such, are not precluded because they may incidentally protect the abutting lands. The true purpose for which repairs or improvements are made, and their suitability therefor, are questions of fact for a jury.

It was a question of fact for the jury in these cases whether or not the work done by the defendant impeded or injured the plaintiffs or either of them in any use of the way to which it was or could have been made susceptible. If not, the defendant could not be held to have obstructed or encumbered the private way in which she was a co-owner with the plaintiffs, nor could it be said that the plaintiffs, or any of them, were injured in his "comfort, property, or the enjoyment of his estate" by either a common and public or a private nuisance. The plaintiffs would not be entitled to maintain their actions either under the statute or at common law.

By directing verdicts for the plaintiffs, essential questions of fact were taken from the jury, and were either decided in favor of the plaintiffs or considered immaterial by the presiding justice. This was error. The exceptions must be sustained.

*Exceptions sustained in both cases.*