INHABITANTS OF WELLINGTON *vs.* INHABITANTS OF CORINNA.

Piscataquis.    Opinion June 11, 1908.

*Ordering Verdict. Rule Relating Thereto. Pauper Notices. Waiver of Defects Therein. Failure to Answer. Effect of Such Failure. Overseers of the Poor. Defective Election Records. Alleged Invalid Divorce. Illegitimate Children. Revised Statutes, chapter 1, section 6, rule XX; chapter 4, sections 12, 14; chapter 27, section 1, paragraph III, sections 39, 40.*

It is a well established rule in this State that the court may properly instruct the jury to return a verdict for either party when it is apparent that a contrary verdict would not be allowed to stand.

Although a pauper notice given by the overseers of the poor of a plaintiff town to the overseers of the poor of the defendant town, states that the pauper named therein " and wife and children " have fallen into distress but fails to state either the names or the number of the children and in that respect is an insufficient compliance with the statute, yet the overseers of the poor of the defendant town as the authorized agents of the town may waive any objection arising from such an informality or defect in the notice, and if they accept such notice without objection as a sufficiently definite statement of the facts, they must be deemed to have waived any objection arising from the failure of the notice to give a more definite description.

Where the overseers of the poor of a defendant town failed to return an answer, within two months, as required by Revised Statutes, chapter 27, section 40, to a pauper notice sent to them by the overseers of the poor of the plaintiff town in compliance with the provisions of section 39 of said chapter, and representing that the pauper named in the notice had a legal settlement in the defendant town and requesting his removal, *Held:* That while under the provisions of the aforesaid section 40 the defendant town was estopped to deny that the settlement of the pauper was in any other than the plaintiff town, yet the defendant town was not precluded from showing that the settlement was in fact in the plaintiff town.

Where the record of a plaintiff town, which had brought an action against the defendant town in a pauper matter, failed to show that the overseers of the poor of the plaintiff town were elected by ballot or major vote *Held:* that such failure was not a fatal defect, it being presumed in the absence

of any evidence to the contrary that the town proceeded in the usual and legal manner, and even if the record were not thus to be credited, it would be sufficient for the plaintiff town to prove that the pauper supplies were furnished by a majority of the acting overseers of the poor of the plaintiff town and that notice was given by one of the acting overseers.

Where the legality of a marriage was denied on the ground that the divorce obtained by the wife from a former husband was invalid for the reason that the libel was not signed by the wife, and it appeared that the wife was unable to write her name and the libel was signed by mark and that the maiden name of the wife was Mary Jane Farrer and that her name after she married her first husband was Mary Jane Mears, and that she was represented in the libel to be Mary Jane Mears but that her counsel inadvertently wrote her maiden name so that her signature appeared to be "Mary Jane x̶ Farrer" instead of Mary Jane Mears, and there was evidence to show that she made the mark for the name of Mary Jane Mears and not Mary Jane Farrer, *Held:* That there was no room for doubt respecting the identity of the libelant and the person who made her mark on the libel and that the decree of divorce was valid.

In this State there are distinct and separate statutes concerning illegitimate children; one relating to their pauper settlement and one relating to their right of inheritance. The statute declaring that when the parents of such children intermarry they are deemed legitimate and have the settlement of their father, applies to the pauper settlement of illegitimate children of parents who are living together in a state of adultery at the time of the birth of such children.

Where four children were born to parents who were living together in adultery at the time of the birth of such children, but who afterward intermarried, *Held:* That under the provisions of Revised Statutes, chapter 27, section 1, paragraph III, such children are deemed legitimate and have the pauper settlement of their father.

In the case at bar, *Held:* That the legal evidence would not support a verdict for the defendant town.

On exceptions by defendants.    Overruled.

Action of assumpsit brought against the defendant town to recover the expense incurred by the plaintiff town for pauper supplies furnished to one Frank M. Moody, his wife and four minor children, and whose pauper settlement was alleged to be in the defendant town.    Writ dated August 17, 1905.    Plea, the general issue, with brief statement as follows:

"That the woman called Jane Moody is not the legal wife of Frank M. Moody.

"That the children called Jennie Moody, Harry Moody, Herbert Moody and Benney Moody are not the legal children of Frank M. Moody.

"That Frank M. Moody had no legal wife and no legal children at the date of this writ in this action.

"That Frank M. Moody had no legal wife and no legal children at the time of the alleged furnishing of supplies, as set out in this writ in this action."

Tried at the February term, 1907, Supreme Judicial Court, Piscataquis County. At the conclusion of the evidence, the presiding Justice directed the jury to return a verdict for the plaintiff town for the amount claimed in the writ with interest from the date of the writ, and thereupon the jury returned a verdict for the plaintiff town for $218.83. To this ruling the defendant town excepted and also took exceptions to the admission of certain evidence during the trial.

The case appears in the opinion.

*Hudson & Hudson*, for plaintiffs.

*J. B. & F. C. Peaks, and Charles W. Hayes*, for defendants.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

WHITEHOUSE, J. This is an action of assumpsit brought to recover the expense incurred by the plaintiff town for pauper supplies furnished between February 21, 1904, and June 4th, 1905, to Frank M. Moody, his wife and four minor children. After the introduction of evidence was closed on both sides, the presiding Justice on motion of the plaintiffs' counsel, directed the jury to return a verdict in favor of the plaintiff for the amount claimed in the writ with interest. The jury thereupon returned a verdict for the plaintiff for $218.83. The case comes to the Law Court on exceptions to this ruling and also to the admission of certain evidence during the progress of the trial.

It is a well established and familiar rule of procedure in this State that the court may properly instruct the jury to return a

verdict for either party when it is apparent that a contrary verdict would not be allowed to stand. *Bennett* v. *Talbot*, 90 Maine, 229 ; *Bank* v. *Sargent*, 85 Maine, 349, and cases cited. In *Woodstock* v. *Canton*, 91 Maine, 62, it clearly appeared from the testimony introduced by the plaintiff, which was not contradicted in any material point, that the pauper had gained a settlement in the defendant town, and the presiding Justice, finding that the evidence would not authorize a verdict for the defendant, directed the jury to return a verdict for the plaintiff. In the opinion of the Law Court, overruling the exceptions to this order, the following quotation is made from *Heath* v. *Jaquith*, 68 Maine, 433, viz: " It would be but an idle ceremony to submit the case to the jury by instructions authorizing them to find for a party, when he has introduced no evidence which would authorize it, and when, if they find a verdict in his favor, it would be the duty of the court to set it aside because there was no evidence to support it." See also *Young* v. *Chandler*, 102 Maine, 251.

The question accordingly presented for the determination of the court in the case at bar, is whether the material and admissible evidence in the case afforded sufficient proof to support a verdict in favor of the defendant. If not, and it would have been the duty of the court to set aside such a verdict if it had been rendered, the ruling of the presiding Justice directing a verdict for the plaintiff was obviously correct.

It was not in controversy that the supplies charged in the plaintiffs' account were actually furnished by the plaintiff town, during the period above stated and that they were necessary for the relief of Frank M. Moody and his family, consisting of Mary J. Moody who was living with him as his wife, and their four minor children named in the declaration, and that the expenditures for which the plaintiff town seeks reimbursement in this action were actually made by the town for the supplies thus furnished. It was satisfactorily established by uncontradicted evidence that the supplies in question were received and consumed in the family of Frank M. Moody, composed of the members above stated, with full knowl-

edge on the part of Frank M. and Mary J. Moody that they were pauper supplies, and that the prices charged therefor were reasonable. It also appeared that two notices dated March 28, 1904, and March 22, 1905 respectively, were seasonably given by the plaintiff town to the defendant purporting to state the facts respecting the Moody family in question, in compliance with section 39 of chapter 27, R. S., and representing that they had a legal settlement in the defendant town and requesting their removal.

It is admitted that no answer was returned to these notices by the overseers of the defendant town, within two months as required by section 40 of chapter 27, R. S., stating their objections to the removal; but the defendant town, besides interposing an objection to the sufficiency of the first notice, now invokes the rule of law settled in *Turner* v. *Brunswick*, 5 Green. 31, that while under the provisions of the statute last cited, the defendant is estopped to deny that the settlement of the paupers in question is in any other than the plaintiff town of Wellington, it is not precluded from showing that it was in fact in that town. The defendant claims that there is evidence showing that pauper settlement of Frank M. Moody was in fact in the town of Wellington during the period in question. But the defendants' principal contention appears to be in accordance with the defense set up in his brief statement that even if the settlement of Frank M. Moody himself was in the defendant town, Mary J. Moody was not his lawful wife and had a separate settlement of her own, and the four minor children were illegitimate and had a separate settlement derived from their mother, and if such were the fact it is conceded that the defendant would not be estopped to show it by reason of its failure to return an answer to the plaintiffs' notices above specified. *Glenburn* v. *Oldtown*, 63 Maine, 582.

These objections urged by the defendants' counsel in support of the exceptions will be considered in their order, and the conclusions of the court stated without extended discussion of the testimony.

With respect to the objection to the sufficiency of the notice from the plaintiff to the defendant town, dated March 28, 1904, the statute above cited provides that overseers "shall send a written

notice . . . . stating the facts respecting a person charge-able in their town, to the overseers of the town where his settlement is alleged to be, requesting them to move him, which they may do." The statement of "facts" must contain a sufficiently definite descrip-tion of the person whose distress has been relieved to enable the overseers receiving the notice, at least by reasonable inquiry, to establish the identity of the person described. *Thomaston* v. *Greenbush,* 98 Maine, 140.

The notice in question of March 28, 1904, states that "Frank M. Moody, and wife and children" have fallen into distress, etc. It fails to give either the names or the number of the children, and in that respect is obviously an insufficient compliance with the statute as interpreted by the court. But as the authorized agents of the town, the overseers of the poor may waive any objection arising from such an informality, or defect in the notice. *Unity* v. *Thorndike,* 15 Maine, 182. Although the overseers of the defend-ant town failed to make any reply to this notice within two months, it appears that on the 4th of the following February, an answer was in fact returned by them, as follows, viz:

"We send you herewith check for amount of the enclosed bill for medical attendance on Frank Moody. Please receipt bill and return and in regard to the bill of $73.49 for supplies furnished said Moody and family, we will say that upon investigation it does not appear clear to us that Mrs. Moody and children are paupers of this town. It will be further investigated and what bills you have for the sup-port of Frank Moody himself we will settle and investigate the other."

It appears from this letter which was authorized by a majority of the overseers of the defendant town, that the notice to which this was a reply, was accepted without objection as a sufficiently definite statement of the facts to enable the overseers to investigate the question of the liability of the defendant town for the support of the "wife and children" of Frank M. Moody. The overseers there-by admitted that "Mrs. Moody and children" were sufficiently identified to them, and they must be deemed to have waived any objection arising from the failure of the notice to give a more definite description. *York* v. *Penobscot,* 2 Maine, 1; *Embden* v. *Augusta,*

12 Mass. 307; *Shutesbury* v. *Oxford*, 16 Mass. 101; *Weymouth* v. *Gorham*, 22 Maine, 385; *Auburn* v. *Wilton*, 74 Maine, 437.

The notice of March 22, 1905, was admitted without objection arising from any alleged defect or informality therein and it appears to be sufficient. It states that Frank M. Moody and his wife Jane Moody and their four minor children have fallen into distress, etc. Construed in connection with the information already possessed by the overseers, as disclosed by their letter of the preceding month above quoted, this notice unquestionably afforded the defendant overseers all the information which they desired in regard to the Moody family at that time. *Holden* v. *Glenburn*, 63 Maine, 579; *Woodstock* v. *Bethel*, 66 Maine, 569.

The defendant further objected to the introduction of the notices on the ground that the record of the election in the plaintiff town for each of the years 1904 and 1905, fails to show that the overseers of the poor were elected "by ballot" or "by major vote." The records for each of these years states that the town "voted and chose" the persons named "overseers of the poor." Sections 12 and 14 of chapter 4 also provide that overseers of the poor shall be chosen "by major vote" and "by ballot." In this case the record is silent as to the mode of choice; the town "voted and chose" the overseers of the poor. But in the absence of any evidence to the contrary it is to be presumed that the town proceeded in the usual and legal manner. Omnia presumuntur rite esse acta. If the record is not impeached, it imports a legal choice, and the overseers are presumed to have been legally elected. *Mussey* v. *White*, 3 Maine, 290; *Blanchard* v. *Dow*, 32 Maine, 557; *Gerry* v. *Herrick*, 87 Maine, 219.

But even if the record were not thus to be credited, it was sufficient for the plaintiffs to prove that the supplies were furnished by a majority of the acting overseers of the poor and that notice was given by one of the acting overseers. *New Portland* v. *Kingfield*, 55 Maine, 172; *Belfast* v. *Morrill*, 65 Maine, 580.

With respect to the second proposition, it satisfactorily appears from uncontradicted testimony that from February 21, 1904, to June 4, 1905, the period during which the supplies in question

were furnished, Frank M. Moody had his pauper settlement in the defendant town of Corinna and not in the plaintiff town of Wellington. It has been seen that no written denial was returned to the overseers of the plaintiff town within two months from the receipt of either of the notices above considered, and while the defendant was not thereby precluded from showing in defense that Moody's settlement was in fact in the plaintiff town, there is not sufficient evidence in the case to support that conclusion. He had a derivative settlement in the town of Corinna, and he never lived in any other town five consecutive years after arriving at the age of twenty-one years, without receiving supplies as a pauper. In reply to a notice from the overseers of the plaintiff town dated February 10, 1900, representing that " Frank M. Moody and family " had fallen into distress and that their settlement was in the defendant town, a letter was returned by the overseers of Corinna under date of February 22, 1900, saying " We are satisfied that this town is not the place of the lawful settlement of the said Frank Moody ' family.' We own him." And it accordingly appears from exhibits in the case that the defendant town paid to the plaintiff five different bills for the support of Frank M. Moody during the years 1904 and 1905, and in the winter of 1906 paid another bill for his support to the town of Dexter. It is true that the defendant is not absolutely precluded from contesting the settlement by the acts of its overseers in furnishing or paying for supplies for the support of the pauper or by their admissions and declarations made in their written answers to notices received, for it is not within the scope of their authority to create or change the settlement of paupers. But such payments for support and such admissions and declarations are important evidential facts bearing upon the question of liability. *Weld* v. *Farmington*, 68 Maine, 301.

But as already noted the principal controversy between the parties arose upon the defendants' contention that Mary Jane Moody, the woman who was living with Frank M. Moody when the supplies in question were furnished and was represented in the notices to be his wife, was not in fact his lawful wife, and that the four minor children mentioned in the notices were not his legitimate children.

And it is conceded that the defendant is not estopped to deny the settlement of the alleged wife and children by reason of its failure to return a written denial to the plaintiff town within two months from the receipt of their notices, unless it appears that they were the wife and children of Frank M. Moody, and that testimony tending to negative that fact was admissible. *Holden* v. *Glenburn*, 63 Maine, 579.

Frank M. Moody, the pauper in question, was divorced from his first wife Lillie B. Moody in December, 1894, and November 26, 1896, married Mary Jane Mears, whose maiden name was Mary Jane Farrar, but she had a lawful husband living named John A. Mears, who was then serving a sentence of imprisonment in the state prison for ten years for the crime of rape, and this marriage to Moody was therefore unlawful and their children illegitimate. On the 7th of October, 1903, however, having learned presumably, that under our statutes only a life sentence in state prison would dissolve the bonds of matrimony without legal process, Mary Jane Mears obtained a decree of divorce from John A. Mears, in the Supreme Judicial Court, and on the fifteenth of the same month was lawfully joined in marriage to Frank M. Moody. The four minor children in question were born after her supposed marriage to Moody in 1896, while John A. Mears was serving his sentence in state prison, and they were the progeny of Frank M. Moody and Mary Jane Mears, afterward Mary Jane Moody. Thereupon the plaintiff invokes paragraph three, section one of chapter 27, R. S., which declares that "Illegitimate children have the settlement of their mother at the time of their birth, but when the parents of such children born after March, 24, 1864 intermarry, they are deemed legitimate and have the settlement of their father." The language of this statute is clear and unambiguous and it must be presumed to mean what it has so plainly expressed. When clear and unequivocal language is used which admits of only one meaning, it is not permissible to interpret what has no need of interpretation. Endlich on Interpretation of Statutes, section 4; *Davis* v. *Randall*, 97 Maine, 36. The justice and humanity of the statute have been illustrated in several instances which have been brought

to the attention of the court since its enactment.  *Minot* v. *Bowdoin*, 75 Maine, 205 ; *Gardiner* v. *Manchester*, 88 Maine, 249.    And there is nothing in its character and purpose or practical operation which would afford any justification for departing from the rule of literal interpretation in applying it.    The obvious purpose of it was to promote the moral welfare of the people by preserving the family in its entirety and preventing the separation of innocent children from their parents in the event of their falling into distress and needing relief under the pauper laws.

But the counsel insists that this statute is not to be construed to apply to the pauper settlement of illegitimate children of parents who were living together in a state of adultery at the time of the birth of such children, and cites *Sams* v. *Sams*, 85 Kentucky, 396, in support of this contention.    But the question before the Kentucky court in that case involved the rights of inheritance of illegitimate children and had no reference to their pauper settlement.    The statute there construed reads as follows :  " If a man having had a child by a woman, shall afterwards marry her, such child or its descendants if recognized by him before or after marriage, shall be deemed legitimate."    And it was held by the court that the statute did not apply to that class of cases where a husband has violated his marriage vows and become the father of children by an adulterous intercourse with another woman during the marital relation.    The reason for this conclusion is thus stated by the court :   " It can scarcely be supposed that any law would have been enacted by which the children of the adulterous intercourse would be made legitimate that they might inherit with the children of the lawful wife, equal parts of the estate.    Such a statute if so construed would only invite the husband to desert his wife and the woman of easy virtue to encourage the violation of his marriage vows, that she might some day become his lawful wife and her children the rightful heirs of the estate."

It is unnecessary to consider whether this court would  have reached the same conclusion respecting the construction of a statute manifestly designed for the protection of innocent children who were not morally responsible for the conduct of their parents.    It

is sufficient to note that the decision of the Kentucky court related solely to the right of inheritance of illegitimate children and that the same considerations of public policy are not involved in the construction of a statute regulating their pauper settlement.   In this State there are distinct and separate statutes concerning illegitimate children, one relating to their pauper settlement and another relating to their rights of inheritance.   See *Lyon* v. *Lyon*, 88 Maine, 395.   Under the provisions of the latter statute, a parent may legitimize his illegitimate children without marrying the mother.   " If the father of an illegitimate child adopts him into his family, or in writing acknowledges before a justice of the peace that he is the father, such child is the heir of his father."

But it may well be questioned whether the case at bar falls within the class represented by the Kentucky case.   It is true that the marriage between Frank M. Moody and Mary Jane Mears Nov. 26, 1896, took place before the divorce was obtained from John A. Mears who was then in state prison.   It appears, however, that all of the requirements of the statutes respecting the record of their intentions of marriage and its solemnization, were carefully observed.   They lived together thereafter as husband and wife, and the four children in question were born after that marriage, and there is reasonable ground for the inference that they honestly believed that their first marriage was a legal one and their children legitimate at the time of their birth.

Finally the defendant denies the legality of the second marriage of October 15, 1903, on the ground that the decree of divorce obtained by Mary Jane Mears from John A. Mears in October, 1903, was invalid for the reason alleged that the libel was not signed by her. It appears that the libelant was unable to write her name and was obliged to make her mark.   It is stated in the libel that her maiden name was Mary Jane Farrar, and counsel inadvertently wrote the name of Mary Jane Farrar instead of Mary Jane Mears, so that the signature appears thus :   "Mary Jane X Farrar."   The libelant is
her
mark
represented in the libel to be Mary Jane Mears and her counsel was permitted to testify that in fact it was Mary Jane Mears, the person

named in the libel, who made the cross in the signature, and in answer to a question by defendant's counsel, he testified that she made that mark for the name of Mary Jane Mears and not Mary Jane Farrar. There is no room for doubt respecting the identity of the libelant and the person who made her mark on the libel. The oral evidence did not contradict the record, but supported it by establishing the identity of the person who made the cross. It is provided in rule XX, sect. 6, chapter 1, R. S., that "when the signature of a person is required he must write it or make his mark." The signature of Mary Jane Mears was required, and being unable to write, she made her mark. The cross made by her hand was in lieu of the name of Mary Jane Mears. The decree of divorce was valid.

All of the exceptions taken to the admission of testimony have been shown to be without merit. It clearly appears that October 15, 1903, Mary Jane Mears became the lawful wife of Frank M. Moody, and although the four minor children in question were illegitimate at the time of their birth, yet by reason of the inter-marriage of their parents Frank M. Moody and Mary Jane Moody, after the divorce of the latter from John A. Mears, these children are to be deemed legitimate under the pauper laws of this State and have the settlement of their father in the defendant town of Corinna.

It is the opinion of the court that the legal evidence in the case would not support a verdict in favor of the defendant, and that the entry must accordingly be,

*Exceptions overruled.*