THERESA CANTILLON

*vs.*

THOMAS B. WALKER, ET AL.
EXECUTORS OF ESTATE OF JANE E. OWEN

York.   Opinion, February 19, 1951.

*William P. Donahue,* for plaintiff.

*Waterhouse, Spencer and Carroll,*
*Edwin G. Walker,* for defendants.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.   This is an action of debt by the plaintiff to recover a pecuniary legacy from the executors of the will of Jane E. Owen.   The case is before us on exceptions

to the direction of a verdict for the plaintiff. The issue is whether the plaintiff left the employ of the testatrix through no fault of her own within the meaning of the will.

In testing the propriety of directing the verdict, we will apply the familiar rules that a verdict is properly directed when a contrary verdict could not be sustained and that the evidence and inferences therefrom are to be taken in the light most favorable to the excepting party. *Hultzen* v. *Witham,* 146 Me. 118, 78 A. (2nd) 342; *Woodstock* v. *Canton,* 91 Me. 62, 39 A. 281; *Heath* v. *Jaquith,* 68 Me. 433; *Lewiston Trust Co.* v. *Deveno,* 145 Me. 224, 74 A. (2nd) 457; *Wellington* v. *Corinna,* 104 Me. 252, 71 A. 889.

The bequest to the plaintiff reads as follows:

> "THIRD: I give and bequeath . . . to Kate Cantillon and Annie Goodwin, each the sum of One Thousand Dollars, if they are in my employ at the time of my decease; to Theresa Cantillon the sum of Five Thousand Dollars if she is in my employ at the time of my decease and also in the event that she shall have left my employ through no fault of her own."

What did the testatrix mean and intend by the phrase "also in the event that she shall have left my employ through no fault of her own"? We will apply the rule set forth in *Palmer* v. *Estate of Palmer,* 106 Me. 25 at 28, 75 A. 130 at 131, as follows:

> "The cardinal rule for the interpretation of wills is that they shall be construed so as to give effect to the intention of the testator. The intention, however, must be gathered from the language which the testator used. It may be sought, as the saying is, within the four corners of the will. If the language of the will is of doubtful meaning, it may be interpreted in the light of conditions existing at the time the will was made, and which may be supposed to have been in the mind of the testator. But the language used must be interpreted in ac-

cordance with the settled canons of interpretation, even if it may result in a seeming otherthrow of the testator's intent. These rules are so well settled that the citation of authorities in support of them is unnecessary."

See also *Dow* v. *Bailey*, 146 Me. 45, 77 A. (2nd) 567, and cases cited; *Bragdon* v. *Smith, Ex'r.*, 136 Me. 474, 477, 12 A. (2nd) 665.

Admittedly the plaintiff was not in the employ of the testatrix at her decease. Whether we say that she left the employment or service of the testatrix is not of importance. Plaintiff claims and takes nothing under the provision "if she is in my employ at the time of my decease." Our concern is only with the provision applicable if plaintiff has "left my employ through no fault of her own."

In searching for the intent of the testatrix, we will take the factual situation existing at the time the will was executed. We accept as facts throughout this opinion only facts which a jury would necessarily have found from the evidence in the record.

Plaintiff and her two sisters entered the employ of the testatrix in 1930, receiving weekly wages. The sisters performed the usual duties of cook and housemaid. The plaintiff, however, was Mrs. Owen's personal maid, and to use the words of Mrs. Mowry, whom we later mention, "was sort of a companion to Mrs. Owen," for a number of years at least prior to November 1944.

In November 1944 the testatrix made and executed her last will and testament disposing of a large estate. Apart from a bequest of "my jewelry, clothing, wearing apparel and articles of personal effects" to the plaintiff and of "my books" to a library association, there were legacies of $23,000 to educational institutions, a hospital association, and a religious society, of $7,000 to named individuals, and the legacies set forth above to the plaintiff and her sisters.

The balance of the estate, including lapsed legacies, was given to trustees, who were also the named executors, for the maintenance of a free public library in Biddeford.

The bequest of jewelry and other personal effects has been received by the plaintiff at a value of $4,826.50. From the executors' account it appears the balance of the estate, apart from plaintiff's claim here in suit, had a value of $387,280.14.

Mrs. Owen was taken sick with her last illness in December 1944, was placed under guardianship March 30, 1945, and died March 16, 1948, without at any time recovering her ability to manage her own affairs. From December 1944 until his appointment as guardian the defendant, Thomas B. Walker, managed the affairs of Mrs. Owen under a power of attorney.

Mrs. Owen remained in her home until her death. Mr. Walker took charge of the household, including control of the servants, obtained doctors and nurses to give the constant care required, and paid the bills from the estate of his ward.

Shortly after the start of her final illness, Mrs. Owen's condition became and remained such that the plaintiff could no longer perform the duties of a personal maid or companion, nor could Mrs. Owen give the personal directions required for such service. The care of Mrs. Owen was in fact wholly in the hands of the doctors and nurses.

Plaintiff did not leave her position as personal maid through fault on her part. The position simply ceased to exist. Mrs. Owen's illness in this respect completely ended the relationship of personal maid or "sort of a companion" as would have death had it then occurred.

With the change brought about by Mrs. Owen's illness, plaintiff continued to work in the household, assisting her

sisters in duties unconnected with the services of a personal maid.

Difficulties developed between the plaintiff and her sisters on the one hand, and the doctors and nurses on the other in which the guardian became involved. To relieve the situation the guardian installed the wife of a nephew of the testatrix as a part-time resident housekeeper. At length on August 7, 1947 the plaintiff was informed by the guardian, that "she must take her orders from Mrs. Mowry (the housekeeper) or quit." On the following day the plaintiff and her sisters left the household without notice to anyone.

The defendants argue that, in leaving the household without notice, the plaintiff left the employ or service of the testatrix through her own fault, and thus did not satisfy the condition attached to the legacy. More accurately the argument is that a jury would be warranted in so finding and accordingly the verdict should not have been directed.

The construction we place upon the will leads to a different conclusion. What did the testatrix mean by the word "employ"? To what employment was the forfeiture condition attached? In our view it was the employment of the plaintiff as a personal maid or "sort of a companion" to use the descriptive phrase of Mrs. Mowry.

No question arises about the validity of the condition attached to the bequest. It differs in terms but not in nature from the often found provision that the beneficiary shall be in the employ of the testator at his decease. 3 *Page, Law of Wills, 3rd Edition,* Sec. 1035, 57 *Am. Jur.* 929-930; *White* v. *Mass. Institute of Technology,* 171 Mass. 84, 50 N. E. 512; *Anderson* v. *Stone,* 281 Mass. 458, 183 N. E. 841, 69 *C. J.* 671.

The difficulty lies in the construction to be placed upon the particular language used by the testatrix. The rule has

been well stated in *La Rocque* v. *Martin,* 344 Ill. 522, 176 N. E. 734 at 735, cited in *Page, supra,* Sec. 1299, as follows:

> "Whether there has been a performance or breach of a condition precedent or a condition subsequent depends upon a construction of the condition, and a reasonable construction is to be given to such condition in favor of the beneficiary and against a forfeiture, and such construction is dependent upon the circumstances of each particular case."

The plaintiff fulfilled the duties of a personal maid faithfully and loyally so far as appears from the record until by reason of Mrs. Owen's illness the duties could no longer be performed. The position of personal maid ceased to exist, as we have seen, obviously through no fault of the plaintiff.

Thereafter the plaintiff was employed by the guardian in a different capacity; namely, that of a domestic servant as were the sisters. Mrs. Owen, under guardianship, could make no contract of employment with the plaintiff. *R. S., Chap. 145, Sec. 29.* Mrs. Owen, in fact, could exercise no control over the plaintiff. The guardian assumed the relation of master with respect to the plaintiff.

Mrs. Owen made the bequests to her personal maid, not to a domestic servant. It was service as personal maid, not as domestic servant, which Mrs. Owen contemplated in the forfeiture clause. The intention of the testatrix was that, unless the plaintiff left the position she then occupied; i. e., personal maid, through fault on her part, the plaintiff would receive the bequest. It was not the intention of the testatrix that, in case the position of personal maid should cease to exist, the plaintiff must continue in service as a domestic servant with duties less important and substantially different in character.

In reaching this conclusion, we place no narrow meaning upon the word "employ". The word as used by the testatrix fairly meant "service". Had the plaintiff and her sisters

remained at work in the household until Mrs. Owen's death, clearly they would have been in Mrs. Owen's service, and hence in her "employ" under the will. It would be a harsh rule, indeed, which would deprive a servant of a bequest upon the ground that appointment of a guardian ended employment although the service to the testator continued to his death.

We must construe, however, the second and only operative condition of the bequest. Plaintiff recovers in the event "she shall have left my employ (meaning 'service') through no fault of her own."

When the will was executed, the testatrix had in mind that in the ordinary course the plaintiff would continue in her service. Mrs. Owen was a widow without children. For years the plaintiff had enjoyed the intimate and personal relationship of a personal maid and "sort of a companion" with the testatrix. The gift in the will of jewelry and other personal effects—the only gift of this nature—indicates the high regard in which the testatrix held the plaintiff. There are significant differences both in amount and conditions between the bequests to the sisters and the bequests to the plaintiff.

If the guardian had removed his ward to a nursing home, as he considered doing at one time, surely the plaintiff could then have left the employ or service, whether we say of the ward or guardian, without forfeiture of the legacy. Or let us suppose the guardian had discharged the plaintiff when it became apparent that the services of a personal maid could no longer be performed. Here again the plaintiff would be entitled to her legacy. If we add to the last supposition that the guardian thereafter employed the plaintiff as a domestic servant in the household maintained by him for his ward, no one would say that the forfeiture provision attached to the new employment.

The facts in the instant case present substantially the situation last described. It was a fact, readily understood and acted upon by both the plaintiff and the guardian, that her duties as personal maid were at an end. Plaintiff did not voluntarily leave the position, nor did the guardian in terms discharge her. Nevertheless from the time her duties as personal maid ended, she became with the agreement, not of Mrs. Owen, but of the guardian, a domestic servant with duties far different, as we have seen, from the duties in which she was engaged under the direction of Mrs. Owen.

The executors in defending the claim have failed to note that the forfeiture for fault was directed to the plaintiff's service as a personal maid. Whether the plaintiff was at fault in the manner in which she left the employ of the guardian in August 1947 is not the issue in the case.

Plaintiff did not forfeit her legacy. The verdict was properly directed for the plaintiff.

*Exceptions overruled.*