LUDGER MARTIN

*vs.*

OSWALD DESCHAINE AND CHARLES AYOTTE

Aroostook.   Opinion, April 1, 1963.

*Albert M. Stevens,* for Plaintiff.

*Arthur J. Nadeau, Jr.,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.   MARDEN, J., did not sit.

SIDDALL, J.   In this case the plaintiff sued the defendant to recover damages for personal injuries sustained in a collision between motor vehicles operated by the plaintiff and by defendant agent.   A jury trial was had and a verdict was returned in favor of the plaintiff.   At the close of plaintiff's case defendant moved for a directed verdict on the grounds that the case presented no evidence of negligence on the part of the defendant and that the evidence indicated that the plaintiff was guilty of contributory negligence.   The motion was taken under consideration by the presiding justice.   At the close of all the evidence the motion was renewed on the same grounds.   The motion

was not granted and judgment was entered for the plaintiff. After judgment the defendant seasonably filed a motion for judgment notwithstanding the verdict based upon the grounds relied upon in the motion for directed verdict. After denial of this motion the defendant appealed from the final judgment.

Defendant's motion for directed verdict and his motion for judgment notwithstanding verdict raise the same issues. The plaintiff at the trial must have presented evidence which with all reasonable inferences would have warranted a reasonable jury in finding the defendant guilty of negligence which was a proximate cause of the accident and that the plaintiff was not guilty of contributory negligence. See *Palmitessa* v. *Shaw,* 157 Me. 503, 504, Maine Civil Practice, Field and McKusick, 411, 415.

A verdict should be directed only when no other verdict could be sustained. Where the evidence and inferences to be drawn therefrom present issues for jury consideration, a verdict should not be directed. *Robichaud* v. *St. Cyr,* 150 Me. 168, 170, 107 A. (2nd) 540.

> "It is well established in this state that 'a verdict should not be ordered for the defendant by the trial court when, taking the most favorable view of the plaintiff's evidence, including every justifiable inference, different conclusions may be fairly drawn from the evidence by different minds.' *Howe* v. *Houde,* 137 Me. 119; *Wellington* v. *Corinna,* 104 Me. 252."
> *Archer* v. *Aetna Casualty Co.,* 143 Me. 64, 68.

At approximately 7:30 a.m. on November 9, 1961, the plaintiff was operating a pickup truck in a general southwesterly direction on the Deschaine Road, so called, in Van Buren. At the same time a farm truck owned by the defendant and operated by his agent was being driven on the same highway in the opposite direction. A heavy fog per-

meated the area and the surface of the road was somewhat slippery. The pickup truck measured from 12′ to 15′ in length, and the farm truck measured 23′ 10″ from bumper to bumper, and was 7′ 10″ wide. The farm truck was equipped with a flat body on the rear, and the distance from the rear wheels to the end of the body was 5′ 8″. The vehicles collided and the plaintiff received serious injuries. The road was a dirt or gravel road and at the place of collision was straight in both directions. The travelled part of the road measured 15 feet, with shoulders of two feet on each side. The plaintiff's vehicle came to rest in a ditch on the westerly side of the road, and the defendant's vehicle struck a bank on the easterly side of the highway and came to an immediate stop, and the body of the truck protruded into the highway at an angle. The plaintiff's vehicle remained in position until the arrival of a police officer, but the defendant's vehicle was moved from the scene in order to allow the driver to call the police and a doctor. After the return of defendant's truck a police officer made certain measurements which were indicated on a chalk used at the trial of the case and reproduced as an exhibit in the record.

The evidence of the circumstances surrounding the accident was conflicting indeed. Some considerable difficulty has been encountered interpreting the testimony of the various witnesses who have used the words "here" or "there" or "this area" in referring to certain locations on a chalk used in the trial of the case. Although we have had the benefit of a reproduction of the chalk we have been unable to identify some of the points thereon which have been referred to in this manner.

The only eyewitnesses to the accident were the plaintiff, the driver of the defendant's vehicle and his son who was a passenger therein. Plaintiff's testimony is summarized as follows: He was travelling along the road with his head-

lights on. Shortly before the accident he had passed a car travelling in the opposite direction, and at that time he had placed his truck in second gear where it had remained until the time of the collision. The morning was foggy, and he could see about 25 to 30 feet ahead. He had been travelling 20 to 25 miles on hour before the accident, and at the time of the accident he was travelling 15 to 20 miles an hour. When he first noticed the defendant's vehicle it was 20 to 30 feet ahead and was being driven in the middle of the road. The plaintiff at the time was "practically on my side of the road." The defendant's vehicle turned to its right and went off the road. The plaintiff thought he had plenty of room to go by, but the front wheels of defendant's truck became stuck in the ditch and its rear end swung in front of him and collided with his vehicle. At the time of the collision the defendant's vehicle occupied almost all of the road, and plaintiff's vehicle was in the ditch. On the other hand, the operator of defendant's vehicle testified that he was driving along the highway with his son as a passenger and that he saw the plaintiff's truck when it was about 75 to 100 feet away. He testified on one occasion that the small lights of the plaintiff's truck were on, and on another occasion that only one light was on. The plaintiff's truck was travelling at 45 to 50 miles an hour, and he, himself, was travelling at about 20 miles an hour on a slight downgrade. He turned his vehicle to the right and drove into the ditch. His right front wheel struck a bank stopping his truck, and while he was in that position his truck was struck by plaintiff's vehicle. He testified that no part of his truck was on the plaintiff's side of the road, but on cross-examination he also gave the following testimony:

"Q  Were you at all into the Martin side of the road at the time of the collision?

A  I was more on my side than on his side.

Q  Was at least part of your truck on his side of the road?

A  When it happened?

Q  Yes, when the accident happened.

A  No.

Q  Were you watching in your rear view mirror at the time of the accident, could you tell if Mr. Martin was not on his side of the road?

A  I do not look in my rear view mirror but when I got out I glanced and he was a little bit more on my side than I was on his.

Q  You said he was more on your side than you were on his side; is that correct?

A  Yes."

The defendant's testimony was corroborated by his son. Other witnesses in the case were the police officer, the owners of the vehicles, the garage owner who moved the plaintiff's vehicle and the operator of a car which passed the plaintiff's truck in the opposite direction shortly before the accident.

The defendant contends that although plaintiff's testimony in itself may prove that defendant was guilty of negligence, his statement of facts lacks probative force and is inconsistent with objective facts. He also contends that the plaintiff was travelling at a speed greater than reasonable under the existing circumstances, and that his inaction in failing to stop or to make an effort to stop his vehicle constituted negligence as a matter of law.

"Uncontroverted and undisputed physical facts may completely override the uncorroborated oral testimony of an interested witness which is completely inconsistent with those physical facts, and natural and physical laws have universal application anl may not be disregarded." *Jordan* v. *Portland Coach Company*, 150 Me. 149, 158, 107 A. (2nd) 416.

The plaintiff in his complaint alleged many negligent acts and omissions on the part of the defendant, including

an allegation that the defendant, through his driver, failed to keep a proper lookout for other vehicles on the highway, and an allegation that he failed to turn seasonably to the right of the middle of the traveled part of the highway so that plaintiff's vehicle might pass in safety. Taking the most favorable view of the evidence from the standpoint of the plaintiff, and every justifiable inference therefrom, a reasonable jury could have found that immediately preceding the accident the defendant's truck was being driven in the center of the highway, and as a result of the failure of the driver to keep a proper lookout for approaching vehicles and to seasonably turn to the right of the middle of the highway a portion of the vehicle, at the time of the collision, protruded into the area westerly of the center line of the highway, although not so far over on that side as the plaintiff's testimony might indicate. A reasonable jury could have concluded that the defendant was thereby guilty of negligence and that such negligence was a proximate cause of the accident.

We cannot say that the undisputed physical facts, including the damage to the vehicles, are inconsistent with a finding that the point of collision was westerly of the center line of the highway. There was testimony of the police officer that he found tire marks on the highway, beginning approximately 100 feet northerly of the supposed point of collision and running to a point near the rear of the farm truck. These tracks were located on the chalk by the witness, who testified that the easterly track started five feet from the easterly side of the road. Assuming that these tracks were made by the plaintiff's truck, they appear to bear gradually to the west and a jury could have reasonably concluded that they had reached the westerly side of the center of the road prior to the collision. The measurements placed upon the chalk and purporting to show the location of the farm truck were made after it had been re-

moved from the ditch and returned to a position which the defendant's driver claimed to be its original position. The location of the truck at the time of the collision was important, and whether it was returned to its original position was a question for jury determination. It is reasonable to suppose that in the process of moving the farm truck from the ditch and attempting to return it to its original position, important physical evidence might have been obliterated.

We cannot say that the operation of plaintiff's vehicle at 25 to 30 miles an hour prior to the accident and 15 to 20 miles an hour at the time of the collision is so unreasonable under the circumstances as to amount to negligence as a matter of law. Plaintiff's testimony indicates that the speed of his vehicle was reduced after he sighted defendant's truck and before the collision. Whether he failed to apply his brakes, and if not, whether such failure amounted to contributory negligence under the circumstances of the case, were questions for a jury.

The evidence in this case presented questions of fact for jury consideration not only in regard to defendant's negligence but also in respect to the exercise of due care by the plaintiff. The jury resolved both questions in favor of the plaintiff and we cannot say that its verdict was manifestly wrong.

In this case the plaintiff had presented evidence which with all reasonable inferences therefrom would have warranted a reasonable jury in finding the defendant guilty of negligence which was a proximate cause of the accident and also that the plaintiff was not guilty of contributory negligence. The presiding justice properly denied defendant's motion for a directed verdict and his motion for judgment notwithstanding verdict.

The entry will be

*Appeal denied.*